**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 11 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

MARILYN STILLMAN, an
individual, and NICOLAS BRYNER
CARAVAGLIA, an individual,

      Plaintiffs-Counterclaim
      Defendants-Appellees,

v.

TEACHERS INSURANCE AND
ANNUITY ASSOCIATION
COLLEGE RETIREMENT EQUITIES
FUND, a New York corporation,

      Defendant-
      Counterclaimant,

v.

YAEKO BRYNER and ERIN JUN
BRYNER,

      Counterclaim Defendants-
      Appellants.

No. 02-4020

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### (D.C. NO. 2:00-CV-0138-ST)

Stephen K. Christiansen, of Van Cott, Bagley, Cornwall & McCarthy (Kenneth W. Yeates, with him on the briefs), Salt Lake City, Utah, for Counterclaim Defendants-Appellants.

Alan L. Sullivan, of Snell & Wilmer L.L.P. (Todd Shaughnessy and Amy F. Sorenson, with him on the brief), Salt Lake City, Utah, for Plaintiffs-Counterclaim Defendants-Appellees.

---

Before **HARTZ** and **McKAY**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

---

**HARTZ**, Circuit Judge.

---

This appeal requires us to consider competing claims to the proceeds of two annuity contracts issued by Teachers Insurance and Annuity Association and College Retirement Equities Fund (TIAA-CREF). The annuitant, Dale Bryner, died in 1999. Dale's ex-wife, Marilyn Stillman, asserted that she was entitled to the annuity benefits because she was the beneficiary designated in the contracts. Marilyn's claim conflicted with the claim of Erin Jun Bryner, Dale's daughter from his subsequent marriage to Yaeko Bryner. Erin based her claim on a 1998 amendment to Utah's Uniform Probate Code, Utah Code Ann. § 75-2-804(2), which revokes upon divorce a pre-divorce designation of a spouse as the beneficiary of an annuity or similar asset.

TIAA-CREF sought interpleader relief under Rule 22 of the Federal Rules of Civil Procedure. The claimants filed cross-motions for summary judgment.

-2-

Ruling that the 1998 amendment did not apply because the beneficiary designations and divorce occurred before 1998, the district court awarded Marilyn the annuity benefits. Erin and Yaeko appeal. Our jurisdiction arises under 28 U.S.C. § 1291.

We vacate the district court's rulings on the summary judgment motions and remand for further proceedings. We hold that § 75-2-804(2) applies even when the beneficiary designation and divorce predate the statute's effective date. Section 75-2-804(2) is a rule of construction, and Utah Code Ann. § 75-2-1301(2) provides that rules of construction in the 1998 amendments apply to documents executed before July 1, 1997. We also hold that application of § 75-2-804(2) in this case does not violate the Contract Clause of the United States Constitution or the comparable Utah constitutional provision.

I.    **Background**

In 1965 Dale purchased two annuities from TIAA-CREF. At the time of this purchase, Dale was married to Marilyn, and the couple had two sons— Nicolas (who now takes the name Nicolas Bryner Caravaglia) and Patrick. Under the annuity contracts issued to Dale, a designated beneficiary would receive death benefits if the annuitant died before annuity payments began. Dale named "Marilyn Stillman Bryner – Wife" as the primary beneficiary and his "Children" as the contingent beneficiaries.

In 1970 Dale and Marilyn divorced. Their divorce decree did not refer to the TIAA-CREF annuities. The next year Dale married Yaeko. They had one child, Erin, born in 1979. In 1988, and again in 1997, Dale purchased new TIAA-CREF annuity contracts, naming Yaeko as the primary beneficiary and Erin as the contingent beneficiary. After learning that he had cancer, Dale made a will in January 1999 in which he left all his property to Yaeko and designated Erin as the contingent beneficiary. The will specifically stated that Dale was not providing for Nicolas and Patrick, the children from his marriage to Marilyn. (Patrick had actually predeceased Dale, but Dale apparently did not have certain knowledge of this event.)

Dale died in February 1999. A year later Marilyn and Nicolas filed suit against TIAA-CREF in federal district court. Their complaint alleged that Marilyn is entitled to the proceeds from the annuities Dale had purchased in 1965, because Dale had designated Marilyn as the beneficiary of the annuities and had never changed this designation using the procedures outlined in the annuity contracts. Among the forms of relief sought by Marilyn and Nicolas was a declaration stating:

> (1) that the 1965 Annuities are valid and enforceable, (2) that Ms. Stillman is the properly designated primary beneficiary under the 1965 Annuities, (3) that no one other than the Plaintiffs in this case has any right to or interest in the benefits of the 1965 Annuities, and (4) that TIAA-CREF must immediately disburse the benefits of 1965

-4-

> Annuities to Ms. Stillman in the manner directed by her for the benefit of herself and Plaintiff Nicolas Bryner Caravaglia . . . .

App. at 16.

TIAA-CREF filed a counterclaim for interpleader under Rule 22 of the Federal Rules of Civil Procedure, noting that Yaeko and Erin had also asserted entitlement to the annuity benefits, and naming as defendants Marilyn, Nicolas, Yaeko, and Erin. The district court entered an order granting TIAA-CREF's request for leave to deposit the proceeds of the 1965 annuities with the court and to be dismissed from the action.

Erin then filed a cross-claim, seeking a declaration that she and Nicolas are the true beneficiaries of the annuity benefits and that she is entitled to one-half the proceeds. The cross-claim further requested that the court declare that Marilyn is entitled to nothing from the annuities.

The two sets of claimants—Marilyn and Nicolas (Appellees) on one side, and Erin and Yaeko (Appellants) on the other—filed cross-motions for summary judgment. The parties agreed that there were no disputed questions of material fact. Following a hearing the court entered an order granting Appellees' motion and denying Appellants' motion. The court ruled that "Marilyn Stillman is solely entitled to all of the proceeds of" the 1965 annuities and that "Yaeko Bryner and Erin Jun Bryner are entitled to take nothing under" the contracts. App. at 262.

Appellants filed a Motion to Alter or Amend the Judgment, which the court denied.  They then  filed this appeal.

Because this is a diversity case, we apply the substantive law of Utah.  We follow federal law, however, regarding the standard for granting summary judgment.  *Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1016 (10th Cir. 2001).  Given that the parties agreed that there are no disputed issues of material fact and moved for summary judgment, "we must examine whether either party is entitled to summary judgment as a matter of law.  This requires a de novo review of the legal determinations of the district court."  *Employee Trs. of Eighth Dist. Elec. Pension Fund v. Employer Trs. of Eighth Dist. Elec. Pension Fund*, 959 F.2d 176, 179 (10th Cir. 1992) (internal citations omitted).

II.    **Discussion**

A.  Application of § 75-2-804(2)

Until 1998, "[t]he general rule in Utah [was] that divorce alone does not terminate a former spouse's rights as a survivor beneficiary of an insurance policy, IRA, or retirement benefits . . . ."  *Estate of Anello v. McQueen*, 953 P.2d 1143, 1145 (Utah 1998).  "[U]nless a property settlement or divorce decree evidence[d] a clear intent" to the contrary, a divorce did not change the former spouse's status as the survivor beneficiary.  *Id.*

In 1998, however, the Utah Legislature enacted a statute which creates essentially the opposite presumption. Utah Code. Ann. § 75-2-804(2) states:

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:
>
> (a) revokes any revocable:
>
> (i) disposition or appointment of property made by a divorced individual to his former spouse in a governing instrument . . . .

The Utah Uniform Probate Code generally defines "governing instrument" to encompass a number of documents, including "a deed, will, trust, [and] insurance or annuity policy." § 75-1-201(19). For purposes of § 75-2-804, a "[g]overning instrument" is "a governing instrument executed by the divorced individual before the divorce . . . ." § 75-2-804(1)(d). Under § 75-2-804(4), "[p]rovisions of a governing instrument are given effect as if the former spouse . . . disclaimed all provisions revoked by this section . . . ."

The Utah Legislature modeled this statute on § 2-804 of the Uniform Probate Code. *See* Terry S. Kogan and Michael F. Thomson, *Piercing the Facade of Utah's "Improved" Elective Share Statute*, 1999 Utah L. Rev. 677, 677 ("In 1998, the Utah Legislature adopted major amendments to the Utah Uniform Probate Code, in an attempt to align the state's code with the latest version of the Uniform Probate Code . . . , adopted by the National Conference of

Commissioners on Uniform State Laws in 1993.") Such revocation-upon-divorce provisions reflect a recognition that "the property owner is unlikely to wish to benefit her former spouse and, had she thought about it, probably would have revoked the pre-divorce beneficiary designation." E. Gary Spitko, *The Expressive Function of Succession Law and the Merits of Non-Marital Inclusion*, 41 Ariz. L. Rev. 1063, 1084 (1999).

This appeal turns on whether the revocation-upon-divorce rule set forth in § 75-2-804(2) applies to Marilyn's designation as the beneficiary of the annuities purchased in 1965. Appellees contend that applying § 75-2-804(2) would have an improper retroactive effect, because the provision would govern conduct—Dale's naming of Marilyn as the beneficiary, as well as Dale and Marilyn's divorce—that occurred prior to the statute's enactment in 1998. Appellants counter that under the effective-date provisions of the Probate Code, a rule of construction such as § 75-2-804(2) applies regardless of the date of the beneficiary designation. They further argue that there is no retroactivity issue here because Marilyn's expectancy interest in the annuity proceeds would have become a vested right only upon Dale's death—an event that occurred *after* the enactment of the statute.

A few words about retroactivity will help frame our discussion of the parties' arguments. Courts generally construe statutes to avoid retroactive application. "[T]he presumption against retroactive legislation is deeply rooted in

our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see also* Norman J. Singer, *Sutherland Statutory Construction* § 41:2 at 376 (2001) (hereinafter "Sutherland") ("There is general consensus that notice or warning of the rule should be given in advance of the actions whose effects are to be judged.") Utah's courts have, unsurprisingly, adopted a presumption against retroactivity in statutory construction, *see Madsen v. Borthick*, 769 P.2d 245, 253 (Utah 1988); and the presumption has been codified by the legislature, *see* Utah Code Ann. § 68-3-3 ("No part of these revised statutes is retroactive, unless expressly so declared.")

The principal difficulty in applying the nonretroactivity presumption is in determining what constitutes retroactivity in a particular context. To determine whether a statute is being applied retroactively, it is necessary to compare two dates: (1) the date the statute went into effect and (2) the date of the activity to which the statute applies. The effective date of a statute is rarely an issue. But arguments abound about what activity is targeted by the statute. Consider, for example, the application of a new rule of evidence in a trial. Is such an application retroactive if (1) the events at issue in the trial (proof of which may be affected by the new evidentiary rule) predate the rule's enactment or if (2) the

lawsuit was filed before the rule's enactment?  Or is the rule non-retroactive as long as it applies only to trials conducted after its enactment?

No one has succeeded in formulating a test for retroactivity that performs well in all contexts.  *See Landgraf*, 511 U.S. at 270 ("Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity.")  As a leading authority on statutory construction has explained, "Judicial opinions are full of standards which purport to govern decision concerning the legality of retroactive application of new law."  *Sutherland*, *supra*, § 41:5 at 414.  All these various formulations, however, reflect a common core concern—fairness.  *See Landgraf*, 511 U.S. at 265 ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly."); *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 856 (1990) (Scalia, J., concurring) ("The presumption of nonretroactivity . . . gives effect to enduring notions of what is fair, and thus accords with what legislators almost always intend."); *Sutherland*, *supra*, § 41:6 at 427 ("Judicial attempts to explain whether . . . protection against retroactive interference will be extended disclose that elementary considerations of fairness and justice govern the decision").  (Fairness concerns, by the way, rarely counsel prospective-only

application of common-law decisions.  *See generally* Melvin A. Eisenberg, *The Nature of the Common Law* 127-32 (1988) (discussing prospective overruling).)

Against this background, we consider the retroactivity issue in this case: whether the revocation-upon-divorce provision set forth in § 75-2-804(2), a provision enacted in 1998, can operate to revoke Marilyn's designation as beneficiary, when both the conduct giving rise to the designation (the purchase of the annuity contracts in 1965) and the conduct giving rise to its potential revocation (the 1970 divorce) occurred many years before the legislation was passed, but the event that vested the parties' rights (Dale's death) postdated the enactment.

Appellants maintain that two provisions of the Utah Uniform Probate Code (U.U.P.C.) authorize the application of § 75-2-804(2) here.  First, the U.U.P.C. contains the following provision, enacted in connection with the Code's initial adoption in 1977: "Any rule of construction or presumption provided in this code applies to instruments executed and multiple-party accounts opened before the effective date unless there is a clear indication of a contrary intent."  Utah Code Ann. § 75-8-101(2)(e).  The U.U.P.C. also includes a similar statement applying to the Code provisions adopted in 1998 (which include § 75-2-804).  Section 75-2-1301(2) states, "Any rule of construction or presumption provided in these provisions applies to governing instruments executed before July 1, 1997, unless

there is a finding of a contrary intent." Because § 75-2-1301(2) specifically addresses the 1998 amendments, we restrict our attention to it. *Cf. Hall v. Utah State Dept. of Corr.*, 24 P.3d 958, 963 (Utah 2001) ("[W]hen two statutory provisions conflict in their operation, the provision more specific in application governs over the more general provision.").

Under § 75-2-1301(2), if the revocation-upon-divorce rule of § 75-2-804(2) is a "rule of construction," then it applies to the governing instruments in this case—Dale's designations of the beneficiaries of the two annuities. Of course, to the extent that the legislature has spoken (through its enactments) regarding the application of a statute, the presumption against retroactivity is ineffective. The presumption is not irrebuttable. *See Landgraf*, 511 U.S. at 280 ("[T]he court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so . . . , there is no need to resort to judicial default rules."). Nevertheless, consideration of nonretroactivity principles can inform our understanding of whether the legislature has indeed spoken with respect to the matter at issue. We therefore turn to an examination of the meaning of "rule of construction" in light of nonretroactivity principles.

Rules of construction tell us how to "construe" legal documents. *See* Lewis M. Simes, *Handbook of the Law of Future Interests* § 86 at 181 (2d ed. 1966) ("The word construction may be defined as the process of ascertaining the

meaning of a written instrument in the light of the circumstances of its execution and in accordance with judicial standards and assumptions."). The appropriate rule of construction depends on the nature of the document. For example, construction of contracts is generally guided by the "objective theory" of contracts—what is important is what the language of the document conveys to reasonable people in the circumstances, not what a party to the agreement privately intended. *See*, *e.g.*, Restatement (Second) of Contracts § 2 cmt. b (explaining that by defining the existence of a "promise" according to the "manifestation of intention," the Restatement "adopts an external or objective standard for interpreting conduct; it means the external expression of intention as distinguished from undisclosed intention").

In contrast, in the law of donative transfers the modern approach is to give effect to what the donor intended, regardless of how precisely that intent was expressed in the operative document. The drafters of the 1990 revisions to Article II of the Uniform Probate Code, upon which the 1998 Utah revisions are based, noted that the revisions were an attempt to respond to several developments in probate law, including "the decline of formalism in favor of intent-serving policies." Prefatory Note to Revised Article II, Uniform Probate Code at 75 (1990). Thus, in the law of donative transfers, "rules of construction . . . aid in determining and giving effect to the donor's intention or probable intention . . . ."

Restatement (Third) of Property: Wills & Other Donative Transfers § 7.2 cmt. a (2001); *see id.* § 11.3 cmt. g ("In the absence of evidence that establishes by a preponderance of the evidence that the particular donor's intention differs from common intention, ambiguities are resolved to the extent possible by construing the document to accord with common intention.").

The application of an intent-serving rule of construction to a preexisting document does not raise the fairness concerns underlying the presumption against retroactivity. When a rule of construction reflects a donor's probable intent, applying that rule does not disrupt settled expectations. To the contrary, applying the rule should result in a construction of the instrument that conforms with the donor's expectations. *Cf. Statement of the Joint Editorial Board for Uniform Probate Code Regarding the Constitutionality of Changes in Default Rules as Applied to Pre-existing Documents* at 4 (1991) (hereinafter *Statement of Joint Editorial Board*) ("The distinctive attribute of intent-serving default rules is that they represent an attempt to protect rather than defeat the decedent's reliance."). Moreover, a rule of construction is not insuperable; it can be overcome by a clear expression of contrary intent. To be sure, if a rule of construction changes—particularly from one presumption to the opposite presumption—it may be unfair to apply the new presumption to someone who organized his or her affairs in reliance on the former presumption. But that difficulty is ameliorated if

the person has time to make the necessary adjustments after the new presumption becomes effective.

In our view, the revocation-upon-divorce provision set forth in § 75-2-804(2) is a rule of construction, and thus falls within coverage of the effective-date provision, § 75-2-1301(2). The reasons for applying rules of construction to preexisting documents apply in the case of § 75-2-804(2). The statute attempts to effectuate the intention of the donor. The Uniform Probate Code provision on which § 75-2-804(2) is modeled derives from the recognition "that when spouses are sufficiently unhappy with each other that they obtain a divorce, neither is likely to want to transfer his or her property to the survivor on death." *Statement of Joint Editorial Board, supra*, at 3-4. Revocation-upon-divorce statutes "reflect the legislative judgment that when the transferor leaves unaltered a will or trust or insurance beneficiary designation in favor of an ex-spouse, this failure to designate substitute takers more likely than not represents inattention rather than intention." *Id.* at 4. Thus, § 75-2-804(2) attributes an intent to the donor based on an assessment of a typical donor's intention. We also note that this statutory attribution of intent is rebuttable. It applies "[e]xcept as provided by the express terms of a governing instrument [such as an annuity contract], a court order, or a contract relating to the division of the marital estate . . . ." Utah Code Ann. § 75-2-804(2).

Applying § 75-2-804(2) to the annuity beneficiary designations does not raise the concerns addressed by the presumption against retroactivity. Dale had the right to change beneficiaries at any time during his lifetime. The purpose of the U.U.P.C. was to effectuate his intent at the time of his death. There is no unfairness in presuming that his desires (if he had stopped to consider them) regarding the beneficiaries changed when he was divorced. Of course, it is theoretically possible that Dale wished to maintain Marilyn as his beneficiary and that his reason for not making this desire explicit is that he was relying on the pre-1998 presumption in Utah law that his pre-divorce designation would continue after the divorce. But as long as we are considering theoretical possibilities, one who was familiar with pre-1998 case law is likely also to know of the 1998 statute, and Dale had sufficient time to adjust to the statutory reversal of presumptions. (Indeed, Dale met with a lawyer and prepared a new will—excluding not only Marilyn but also his children by her—after enactment of the 1998 amendments.)

Appellees suggest that § 75-2-804(2) should not be treated as a rule of construction because of the provision's placement within the organizational scheme of the U.U.P.C. Chapter 2, Part 7 of the Code is entitled "Rules of Construction for Governing Instruments." (Another part, Part 6, contains the "Rules of Construction for Wills.") The Utah legislature did not place the revocation-upon-divorce provision in Part 7, but instead placed it in Part 8,

entitled "General Provisions." Appellees argue that "[w]ere the revocation-on-divorce statute indeed a 'rule of construction,' . . . the legislature surely would have so indicated, and included the 'rule' where it allegedly belongs, with the Code's 'Rules of Construction for Governing Instruments' in Part Seven." Aple. Br. at 28. Therefore, they conclude, the effective-date provision's reference to "rules of construction" cannot be interpreted as extending to the revocation-upon-divorce rule in § 75-2-804(2).

We disagree with Appellees' analysis. By its terms, the effective-date provision in § 75-2-1301(2) does not limit its scope to rules of construction set forth within Part 7. It does not state that "[a]ny rule of construction or presumption *provided in Part 7* applies to governing instruments executed before July 1, 1997 . . . ." Section 75-2-1301(2) instead uses broader language, referring to "[a]ny rule of construction or presumption *provided in these provisions* . . . ." The word "provisions" undoubtedly refers to all provisions added by the 1998 amendments.

Furthermore, the language of § 75-2-1301(2) itself implies that it is intended to apply to provisions that do not appear in Parts 6 and 7. Section 75-2-1301(2) states: "Any rule of construction or presumption provided in these provisions applies to governing instruments executed before July 1, 1997, *unless there is a finding of a contrary intent*." (emphasis added). The phrase "unless there is a

-17-

finding of a contrary intent" is superfluous when addressing provisions in Parts 6 and 7 because all those provisions are dependent on the absence of a finding of contrary intent. *See* U.U.P.C. § 75-2-601 ("In the absence of a finding of a contrary intention, the rules of construction in this part control the construction of a will."); *id.* § 75-2-701 ("In the absence of a finding of a contrary intention, the rules of construction in this part control the construction of a governing instrument."). Unless we assume that the last nine words of § 75-2-1301(2) were added as a mere rhetorical flourish—which would be contrary to proper statutory construction, *see United States v. Brown*, 334 F.3d 1197, 1207 (10th Cir. 2003) (court should refrain from construing a statute so as to render words superfluous)—this effective-date provision must apply to provisions not included in Parts 6 or 7.

We draw additional support for our view that § 75-2-804(2) is a rule of construction from an article by Lawrence W. Waggoner, Director of Research and Chief Reporter for the Uniform Probate Code. As previously noted, the U.U.P.C. is modeled on the Uniform Probate Code. Like the Utah version of the Code, the 1990 Uniform Probate Code devotes two Parts to "Rules of Construction"—Article II, Part 6 contains the "Rules of Construction Applicable Only to Wills" and Part 7 contains the "Rules of Construction Applicable to Wills and Other Governing Instruments." Also like the Utah Code, the Uniform Probate Code places the

revocation-upon-divorce provision in Part 8—the Part containing "General Provisions Concerning Probate and Nonprobate Transfers."  U.P.C. § 2-804.  If Appellees' analysis of the organization of Utah's Probate Code were correct, it would also apply to the organization of the Uniform Probate Code—the revocation-upon-divorce provision could not be a rule of construction, because it is not included within one of the Parts expressly labeled "Rules of Construction."  But in an article addressing the 1990 revisions to the Uniform Probate Code, Professor Waggoner describes the revocation-upon-divorce rule set forth in § 2-804 as a rule of construction that should apply to documents predating the provision's enactment.  *See* Lawrence W. Waggoner, *Spousal Rights in Our Multiple-Marriage Society:  The Revised Uniform Probate Code*, 26 Real Prop. Prob. & Tr. J. 683, 699-700 (1992); *see also id.* at 700 (noting the Joint Editorial Board's view that § 2-804 "merely establishes a rule of construction").  Professor Waggoner's view is entitled to particular respect because of his prominent role in drafting the Uniform Probate Code as well as the imprimatur given his article by the Commentary to Uniform Probate Code § 2-804, which states that "[t]he theory of this section is discussed in [Waggoner's article]."  Comment to U.P.C. § 2-804 at 221.

Appellees also argue that this case presents a timing issue other than whether a revocation-upon-divorce statute extends to documents predating the

statute's enactment.  They contend that the date of a couple's divorce, relative to the statute's effective date, is also relevant in determining whether it is proper to apply § 75-2-804(2).  Appellees suggest that one of the grounds supporting § 75-2-804(2)—that "[a] decedent can . . . avoid automatic revocation-on-divorce by making contrary provisions in a divorce decree,"Aple. Br. at 38—is undercut "if the statute [is] applied retroactively to divorces obtained decades before the statute was passed." *Id.*

Appellees' argument does not withstand analysis.  Consider who would wish to provide in the divorce decree or property settlement that the former spouse is entitled to remain the beneficiary of the annuity.  We first consider the wishes of the annuitant, although Dale's wishes do not appear to be Appellees' principal interest.  It would be remarkable if the annuitant would have wished to have his future freedom of choice restricted by having the beneficiary mandated in, say, the divorce decree.  (Of course, there is a possibility that even after divorce the annuitant would wish to retain the former spouse as beneficiary; but that could be accomplished any time after divorce with a revocable designation of the former spouse.)  Moreover, even if that were the annuitant's desire, the enactment of § 75-2-804(2) changed nothing in that regard.  Even under former law the annuitant would have had freedom to change the beneficiary absent a restriction in the divorce decree or property settlement agreement.  Thus, the annuitant cannot

-20-

claim that it would be unfair to apply § 75-2-804(2) just because it is now too late to place a beneficiary designation in the divorce decree.

The non-annuitant spouse—the beneficiary—has still less ground for complaint. If the beneficiary wanted the beneficiary designation to be irrevocable, the beneficiary would have had the same incentive under former law as under § 75-2-804(2) to impose that condition in the divorce decree or property settlement. Perhaps the beneficiary would believe that she would always remain the beneficiary because the annuitant would pay no attention to the beneficiary designation and she could ultimately rely on the common-law presumption in effect before 1998. But we see no reason to protect an expectation interest that rests on an assumption that the annuitant would be unaware of his right to change beneficiaries.

We conclude that it was error to grant summary judgment in favor of Appellees on the ground that applying § 75-2-804(2) to revoke Marilyn's beneficiary designation violated the presumption against retroactivity. Under the effective-date provision, § 75-2-1301(2), the court should apply § 2-804(2) to the beneficiary designations with respect to the annuities at issue.

B. Constitutional Contract Clauses

Appellees argue that even if, as a matter of statutory construction, § 75-2-804(2) applies here, the summary judgment should be affirmed because applying §

75-2-804(2) to terminate Marilyn's status as the designated beneficiary of the annuities would violate the Contracts Clauses of the United States and Utah Constitutions. Article I, § 10 of the United States Constitution declares that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." Similarly, the Utah Constitution states that "[n]o . . . law impairing the obligation of contracts shall be passed." Utah Const. Art. I, § 18. The Utah clause "is patterned after" the federal clause. *George v. Oren Ltd. & Assocs.*, 672 P.2d 732, 737 (Utah 1983).

In determining whether a statute violates the federal Contracts Clause, a court first "ask[s] whether the change in state law has operated as a substantial impairment of a contractual relationship." *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992) (internal quotation marks and citation omitted). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* When a new law does substantially impair contractual relations, "the State, in justification, must have a significant and legitimate public purpose behind the [law], such as the remedying of a broad and general social or economic problem." *Energy Reserves Group v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983) (internal citation omitted). The court then asks whether the change in the law "[is based] upon reasonable conditions and [is] of a

character appropriate to the public purpose justifying [the legislation's] adoption." *Id.* at 412 (internal quotation marks omitted). As long as "the State itself is [not] a contracting party, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* at 412-13 (internal quotation marks and citation omitted).

Appellees have distinguished support for their Contract Clause contention. In *Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir. 1991), the Eighth Circuit held unconstitutional an Oklahoma revocation-upon-divorce statute similar to the one at issue in this case, in the context of a beneficiary designation in a life insurance policy. The court reasoned that the insured party "was entitled to expect that his wishes regarding the insurance proceeds, as ascertained pursuant to . . . then-existing law, would be effectuated," and that "[b]y reaching back in time and disrupting this expectation, the Oklahoma legislature impaired [the insured's] contract." *Id.* at 1322. Other courts have likewise found that the application of revocation-upon-divorce statutes to preexisting documents violates the federal Contracts Clause and similar state constitutional provisions. *See, e.g.*, *Parsonese v. Midland Nat'l Ins. Co.*, 706 A.2d 814, 818 (Pa. 1998) (stating that "[t]he very essence of [the insured party's] contract with [the insurance company] was undermined by the operation of [Pennsylvania's] statute," because "[s]election of a beneficiary is the entire point of a life insurance policy"); *Aetna Life Ins. Co. v.*

*Schilling*, 616 N.E.2d 893, 896 (Ohio 1993) (stating that "the provisions of [Ohio's statute], as applied to [life insurance] contracts entered into before the effective date of the statute, impair the obligation of contracts in violation of" the Ohio Constitution).

Appellants have failed to respond meaningfully to the Contracts Clause issue in their reply brief. They simply state that they have no space in their brief for an argument on the point and ask for an additional opportunity to brief the matter if we wish to address it. This was a risky gamble by Appellants. We may "affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Weitzel v. Div. of Occupational & Prof'l Licensing of Dept. of Commerce of State of Utah*, 240 F.3d 871, 876 (10th Cir. 2001) (internal quotation marks omitted). The odds of our doing so greatly increase when, as here, the issue is purely one of law and was fully briefed below.

Nevertheless, Appellants lucked out. We reject Appellees' Contracts Clause argument. Application of § 75-2-804(2) does not impair any contract right. The *Whirlpool* line of cases has been persuasively criticized by other distinguished authorities. After *Whirlpool* was decided, the Joint Editorial Board for the Uniform Probate Code issued a statement asserting that the opinion was

"manifestly wrong." *Statement of Joint Editorial Board*, *supra*, at 1. The Board wrote:

> A life insurance policy is a third-party beneficiary contract. As such, it is a mixture of contract and donative transfer. The Contracts Clause of the federal Constitution appropriately applies to protect against legislative interference with the contractual component of the policy. In [*Whirlpool*] and in comparable cases, there is never a suggestion that the insurance company can escape paying the policy proceeds that are due under the contract. The insurance company interpleads or pays the proceeds into court for distribution to the successful claimant. The divorce statute affects only the donative transfer, the component of the policy that raises no Contracts Clause issue.

*Id.* at 3.

We agree. TIAA-CREF served two functions with respect to the annuities at issue. First, it funded the annuities, agreeing to make the payments called for in the annuity contracts. Second, it was to act in essence as an escrow agent, making the payments as directed by the annuitant, Dale. The contract between TIAA-CREF and Dale with respect to the second function calls for TIAA-CREF to follow proper instructions regarding where to make the payments.

Section 75-2-804(2) has no effect on the first function performed by TIAA-CREF. As for the second function, the impact of § 75-2-804(2) on TIAA-CREF's "escrow-agent" role does not constitute the impairment of a contractual right. Dale's choice of beneficiaries is a donative transaction, not a contractual arrangement. That the donative transfer must be effectuated with the assistance of

-25-

a party in a contractual relationship with the donor does not transmute the donative transfer into the performance of a contractual obligation. Section 75-2-804(2) does not impair the contractual relationship between Dale and TIAA-CREF. What it does is change the import of the donative instructions from Dale—instructions that TIAA-CREF has an obligation to follow. There is no more an impairment of a contract than if Dale had made the beneficiary designation in his will, providing no instructions directly to TIAA-CREF.

The Contracts Clause addresses contracts, not donative transfers. Because no contractual obligation is impaired by § 75-2-804(2), there is no violation of the federal Contracts Clause in applying the statute here. *See In Re Estate of DeWitt*, 54 P.3d 849, 859-60 (Colo. 2002) (ruling, based largely on the reasoning set forth in the Statement of the Joint Editorial Board, that the Colorado version of U.P.C. 2-804 does not violate the Contracts Clause); *In re Estate of Dobert*, 963 P.2d 327, 332 (Ariz. Ct. App. 1998) (rejecting a Contracts Clause challenge to the Arizona version of U.P.C. 2-804 because, *inter alia*, the statute did not impair the insurer's "obligat[ion] to pay the proceeds of [the decedent's] life-insurance policy to the legal beneficiary"); *cf. Allstate Life Ins. Co. v. Hanson*, 200 F. Supp. 2d 1012, 1019-20 (E.D. Wis. 2002) (upholding Wisconsin version of U.P.C. 2-804 against a Contracts Clause claim, because the claimant lacked a vested interest in continuing as the beneficiary of the life insurance policy; "the change in the law brought

about by [the statute] was foreseeable"; and the statute "did not prevent [the decedent] from maintaining [his ex-spouse] as his beneficiary").

There is also no violation of Utah's contract clause. Although there may be differences in some aspects of the analysis to be conducted under the state and federal provisions, the "threshold question of whether a contract was in fact impaired" is analyzed the same under both. *Trail Mountain Coal Co. v. Utah Div. of State Lands & Forestry*, 921 P.2d 1365, 1371 n.10.

C.  Necessity for Remand

Finally, Appellees contend that they are entitled to summary judgment regardless of whether § 75-2-804(2) can be properly applied in this case. A court order relating to the divorce states that the children of Dale and Marilyn should receive "life insurance benefits conditional to [Dale's] employment." App. at 146. Appellees assert that this statement would encompass the 1965 annuities, as the annuities were the only life insurance Dale received through his employer. Thus, Nicolas, the surviving child of Dale and Marilyn, would be the proper contingent beneficiary if Marilyn's interest in the annuity proceeds were revoked under § 75-2-804(2).

The district court did not reach this issue, and we decline to consider it for the first time on appeal. The parties disagree about the proper inferences to be drawn from the order's reference to "life insurance benefits." It is better to leave

to the district court in the first instance the tasks of determining whether this reference related to the TIAA-CREF annuities and of overseeing any factual development required for the proper interpretation of the statement *See, e.g.*, *Yvonne L. v. N.M. Dep't of Human Servs.*, 959 F.2d 883, 893 (10th Cir. 1992) (We "are generally reluctant to affirm a trial court's decision on legal grounds not considered by the trial court, and will do so only when the facts are sufficiently clear to permit a determination." (internal quotation marks omitted)).

## III.  Conclusion

Accordingly, we VACATE the district court's summary judgment in favor of Appellees and the district court's denial of Appellants' motion for summary judgment; and we REMAND for further proceedings.