#24488-a-DG

**2007 SD 101**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

WALTER L. BUCHHOLZ,
individually and in his capacity,
as PERSONAL REPRESENTATIVE
of the ESTATE OF LINDA C. BUCHHOLZ,            Plaintiff and Appellee,

v.

HAROLD E. STORSVE,                            Defendant and Appellant,

and

SOUTH DAKOTA RETIREMENT SYSTEM,        Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WARREN G. JOHNSON
Judge

* * * *

DYLAN A. WILDE of
Brady & Pluimer, P.C.
Spearfish, South Dakota              Attorneys for plaintiff
                                     and appellee.


STEVEN M. CHRISTENSEN of
Christensen Law Office
Deadwood, South Dakota               Attorneys for defendant
                                     and appellant.

* * * *

ARGUED AUGUST 28, 2007

OPINION FILED **09/26/07**

#24488

GILBERTSON, Chief Justice

[¶1.]        Linda C. Buchholz (Linda) passed away, leaving a State of South
Dakota retirement plan naming her ex-spouse, Harold E. Storsve (Storsve), as the
primary beneficiary.  Linda's surviving spouse, Walter L. Buchholz (Buchholz), filed
a declaratory judgment action seeking revocation of the retirement plan's
beneficiary designation and an order declaring Buchholz the lawful beneficiary of
Linda's retirement account.  The parties filed cross-motions for summary judgment.
The circuit court granted Buchholz's motion for summary judgment.  We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶2.]        Linda and Storsve were married on October 18, 1966.  On June 10,
1969, Linda began working for Black Hills State College (now Black Hills State
University) in Spearfish, South Dakota.  As a state employee, Linda participated in
the retirement plan administered through the South Dakota Retirement System
(SDRS).[1]  She started making contributions on July 1, 1971, and named her then
husband, Storsve, as the primary beneficiary of her retirement plan.[2]

[¶3.]        On June 4, 1975, Linda and Storsve divorced.  Neither the divorce
decree nor the associated findings of fact and conclusions of law made any reference
to Linda's retirement plan.  The only related conclusion stated that "each of the
parties [is] awarded all of his or her personal property."  Linda received annual

---

1.    Defendant South Dakota Retirement System notified this Court that it takes
      no position in this case, other than that the law be served.

2.    Linda named her father as the contingent beneficiary, but he predeceased
      her.

-1-

statements setting forth the status of her retirement account, which, until 1996, also listed her designated primary beneficiary. Linda did not amend, change or remove Storsve as the designated beneficiary of her retirement account after their divorce.

[¶4.]     Linda later married Buchholz on October 1, 1979. Approximately three years after Linda and Buchholz married, Linda quit working for Black Hills State College. Linda passed away on November 8, 2006, while still married to Buchholz. At the time of her death, Storsve was still the named beneficiary on her South Dakota retirement plan. After Linda's death, SDRS informed Storsve that he was the named beneficiary of Linda's retirement plan.

[¶5.]     Despite this designation, Buchholz claimed that he was entitled to the assets from Linda's retirement plan and brought a declaratory judgment action to determine his legal rights to the same. Both parties submitted motions for summary judgment. After a hearing on both motions, the circuit court denied Storsve's motion and granted Buchholz's concluding that SDCL 29A-2-804 automatically revoked the beneficiary designation in the name of Storsve upon Storsve and Linda's divorce; that SDCL 29A-2-804 did not violate the Contract Clause of the South Dakota Constitution; and that Buchholz was the lawful beneficiary of Linda's South Dakota retirement account.

[¶6.]     Storsve appeals raising the following issues:

1. Whether the circuit court erroneously applied SDCL 29A-2-804(b) to automatically revoke the beneficiary designation in the name of Storsve.

2. Whether application of SDCL 29A-2-804 is unconstitutional.

## STANDARD OF REVIEW

[¶7.]    Both parties moved for summary judgment and the material facts are undisputed.  Thus, this Court's "'review is limited to determining whether the [circuit] court correctly applied the law.'"  Johns v. Black Hills Power, Inc., 2006 SD 85, ¶4, 722 NW2d 554, 556 (quotation omitted) (alteration in original).  Furthermore, "'[s]tatutory interpretation and application are questions of law, and are reviewed by this Court under the de novo standard of review.'"  Rotenberger v. Burghduff, 2007 SD 7, ¶8, 727 NW2d 291, 294 (quotation omitted).  We apply the de novo standard when reviewing the constitutionality of a statute.  Purdy v. Fleming, 2002 SD 156, ¶12, 655 NW2d 424, 429 (citations omitted).  Furthermore, we have said

> [W]hen this Court reviews the constitutionality of a law, it will be upheld unless it is clearly and unmistakably unconstitutional.  That law is presumed to be constitutional.  Any challenge must rebut the presumption and prove beyond a reasonable doubt that the law is unconstitutional.

Am. Fed'n of State, County, and Mun. Employees (AFSCME) Local 1922 v. State, 444 NW2d 10, 14 (SD 1989) (internal citations omitted).

## ANALYSIS AND DECISION

[¶8.]    **1.    Whether the circuit court erroneously applied SDCL 29A-2-804(b) to automatically revoke the beneficiary designation in the name of Storsve.**

[¶9.]    Prior to 1982, this issue had not been addressed by this Court or by statute.  While the Uniform Probate Code was passed by the South Dakota Legislature in 1974, *see* 1974 SD Sess. Laws ch 196, and subsequently repealed in 1976, *see* 1976 SD Sess. Laws ch 175 § 2, ch 177 § 3, it did not contain the provision

that was to become SDCL 29A-2-804, which is at issue in this case. Until 1995, the general rule outside South Dakota in non-UPC states was that divorce did not affect a beneficiary designation. *See* Girard v. Pardun, 318 NW2d 137, 138-40 (SD 1982). In *Girard* we adopted this rule. *Id*. at 140.

[¶10.] However, in 1995, South Dakota adopted the Uniform Probate Code (UPC), which resulted in the enactment of SDCL 29A-2-804. This statute provides in pertinent part:

> (b) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, *the divorce or annulment of a marriage*:
>
> (1) *Revokes any revocable (i) disposition or appointment of property made by a divorced individual to a former spouse in a governing instrument . . . .*

SDCL 29A-2-804(b) (emphasis added). The statute defines "[g]overning instrument" as "a will, trust, or other governing instrument executed by the divorced individual before the divorce or annulment of the individual's marriage to the former spouse." SDCL 29A-2-804(a)(4). The South Dakota Uniform Probate Code generally defines "[g]overning instrument" to encompass a number of documents, including "a . . . retirement, or similar benefit plan. . . ." SDCL 29A-1-201(19). Storsve does not dispute the fact that Linda's retirement account qualifies as a "governing instrument" under SDCL 29A-2-804(b).

[¶11.] Storsve contends that applying SDCL 29A-2-804 in this case violates the fundamental rule of statutory construction that statutes are to only have prospective effect unless a retroactive effect is clearly intended. *See* Fed. Farm

Mortgage Corp. v. Noel, 66 SD 481, 285 NW 871, 872 (1939). However, the South

Dakota Legislature has made it clear that it intended UPC rules of construction,

such as SDCL 29A-2-804(b), to apply retroactively. SDCL 29A-8-101 provides in

pertinent part:

> (a) This code takes effect on July 1, 1995.
> (b) Except as provided elsewhere in this code:
>
> . . .
>
> (2) This code applies to governing instruments executed by decedents dying on or after July 1, 1995, no matter when executed. *Any rule of construction or presumption provided in this code applies to governing instruments executed before July 1, 1995, unless there is a clear indication of a contrary intent. . . .*

(Emphasis added). The governing instrument in this case was executed by Linda

who died on November 8, 2006, eleven years after July 1, 1995. Thus, SDCL 29A-2-

804(b) applies to the governing instrument provided it is considered a "rule of

construction."

[¶12.]     Other courts that have addressed this issue have applied the statute

retroactively. For instance, the Tenth Circuit Court of Appeals held "the revocation-

upon-divorce provision set forth in § 75-2-804(2) is a rule of construction, and thus

falls within coverage of the effective-date provision. . . ." Stillman v. Teachers Ins.

& Annuity Ass'n College Retirement Equities Fund, 343 F3d 1311, 1317 (10thCir

2003). "[I]n the law of donative transfers, 'rules of construction . . . aid in

determining and giving effect to the donor's intention or probable intention[.]'" *Id.*

(quotation omitted). Since the revocation-upon-divorce statute attempts to

effectuate the intention of the donor, it is a rule of construction. *Id.* The *Stillman* court reasoned:

> The Uniform Probate Code provision on which § 75-2-804(2) is modeled derives from the recognition "that when spouses are sufficiently unhappy with each other that they obtain a divorce, neither is likely to want to transfer his or her property to the survivor on death." Revocation-upon-divorce statutes "reflect the legislative judgment that when the transferor leaves unaltered a will or trust or insurance beneficiary designation in favor of an ex-spouse, this failure to designate substitute takers more likely than not represents inattention rather than intention." Thus, § 75-2-804(2) attributes an intent to the donor based on an assessment of a typical donor's intention. We also note that this statutory attribution of intent is rebuttable. It applies "[e]xcept as provided by the express terms of a governing instrument [such as an annuity contract], a court order, or a contract relating to the division of the marital estate. . . ."

*Id.* at 1318 (internal quotations omitted) (alterations in original). *See also* Allstate Life Ins. Co. v. Hanson, 200 FSupp2d 1012, 1016 (EDWis 2002) ("[t]he legislature [ ] applied the 1998 revisions retroactively").

[¶13.]     Storsve also contends that one of the three exceptions in SDCL 29A-2-804(b) applies in this case; therefore, the general rule that divorce automatically revokes an ex-spouse's beneficiary designation in a retirement plan does not apply. Revocation of a beneficiary designation is automatic upon divorce "[e]xcept as provided by the express terms of" (1) "a governing instrument," (2) "a court order," or (3) "a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment." SDCL 29A-2-804(b). Storsve argues that the retirement plan expressly designated himself as the beneficiary; therefore, the first exception applies.

[¶14.]     However, were we to adopt Storsve's position that the beneficiary designation alone meets the "express terms of a governing instrument" exception, SDCL 29A-2-804 would never apply because every governing instrument contains this provision, and it is this provision that prompts the necessity of the statute. Thus, a beneficiary designation itself is not sufficient to invoke the express terms exception. *See also* Lincoln Benefit Life Co. v. Heitz, 468 FSupp2d 1062, 1066, 1069 (DMinn 2007) (recognizing the same express terms exception found in South Dakota's re-designation statute and holding that the beneficiary designation automatically revoked upon divorce, despite the life insurance policy's designation of the former spouse as the beneficiary).

[¶15.]     We hereby interpret the statute to require that the governing instrument contain express terms referring to divorce, specifically stating that the beneficiary will remain as the designated beneficiary despite divorce. Linda failed to indicate any such terms in the SDRS plan. Thus, the "express terms of a governing instrument" exception does not apply.

[¶16.]     Storsve also argues that Linda's inactions of not removing him as the beneficiary indicates her intent to leave Storsve as the beneficiary despite the couple's divorce. However, we observe that courts have considered and rejected this same argument raised by Storsve. An Arizona court held the purpose of the revocation-upon-divorce or re-designation statute, as similar statutes have been termed by various courts, "would be eviscerated if a former spouse could circumvent the automatic revocation effected by the statute by submitting self-serving testimony that the decedent spouse's inaction reflected an intention to revive his or

her designation of the ex-spouse as the beneficiary." Estate of Lamparella, 109 P3d 959, 966 (ArizAppDiv 2005). Instead, "[i]f a divorced spouse wishes to redesignate the former spouse as the beneficiary post-dissolution, such designation must be in writing and must otherwise comply with applicable policy terms." *Id*. at 967. *See also* Mearns v. Scharbach, 12 P3d 1048, 1053 (WashAppDiv 2000) ("any redesignation of [ex-spouse] as a beneficiary had to be in writing").

[¶17.]        Herein there is no showing Linda ever read the annual statements she received from SDRS. Her inaction does not equate with consent. Storsve fails in his burden under SDCL 29A-2-804 to show Linda's inaction rises to a clear indication of a contrary intent to her decree of divorce from Storsve and its complete division of their martial assets. A policy holder's inaction is insufficient to circumvent application of SDCL 29A-2-804. Based on foregoing, the circuit court did not err when it applied SDCL 29A-2-804 to automatically revoke the beneficiary designation in Linda's retirement plan.

[¶18.]        **2.      Whether application of SDCL 29A-2-804 is unconstitutional.**

[¶19.]        Storsve further contends that retroactive application of SDCL 29A-2-804 unconstitutionally impairs Linda's contract with SDRS by disrupting the expectation that the proceeds would go to the named beneficiary. He specifically argues that retroactive application violates the Contract Clause of Article VI, Section 12 of the South Dakota Constitution.[3]

---

3.      Article VI Section 12 of the South Dakota Constitution states: "No ex post facto law, or law impairing the obligation of contracts or making any irrevocable grant of privilege, franchise or immunity, shall be passed."

(continued . . .)

[¶20.]     When presented with the issue of whether a statute violates the Contract Clause, "[o]ur first inquiry is whether there has been a substantial impairment of the contractual relationship." *AFSCME Local 1922*, 444 NW2d at 14 (citation omitted).  The United States Supreme Court has explained that "[t]his inquiry has three components: [(1)] whether there is a contractual relationship, [(2)] whether a change in law impairs that contractual relationship, and [(3)] whether the impairment is substantial."  GMC v. Romein, 503 US 181, 186, 112 SCt 1105, 1109, 117 LEd2d 328 (1992).[4]  Furthermore, even if there is a substantial impairment, the statute will survive "a constitutional attack if the impairment is justified as reasonable and necessary to serve an important public purpose." *Lincoln Benefit*, 468 FSupp2d at 1067 (citation omitted).

[¶21.]     A number of courts applying this rubric have determined that applying state re-designation statutes retroactively does not violate the Contract Clause. *Stillman*, 343 F3d at 1322; *Lincoln Benefit*, 468 FSupp2d at 1069; *Hanson*, 200 FSupp2d at 1021; Estate of DeWitt, 54 P3d 849, 859 (Colo 2002); *Mearns*, 12 P3d at 1056; Estate of Dobert, 963 P2d 327, 332 (ArizCtApp 1998).  Storsve, however,

_____

(. . . continued)

     Similarly, Article I, Section 10 of the United States Constitution provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts. . . ."

4.    In determining whether a statute violates South Dakota's Contract Clause, this Court has looked to the United States Supreme Court's analysis of the Federal Constitution's Contract Clause for guidance.  *See* Engelcke v. Farmers' State Bank, 61 SD 92, 246 NW 288, 290-91 (1932) (stating the Federal and State Constitutions contain in substance and effect the same provisions).

relies on *Whirlpool Corp. v. Ritter*, 929 F2d 1318 (8thCir 1991), wherein the Eighth Circuit Court of Appeals held that a similar Oklahoma statute was an unconstitutional impairment of contracts when applied to insurance contracts entered into before the statute became effective. *Id*. at 1323. However the *Whirlpool* decision has been persuasively criticized by both the Joint Editorial Board (JEB) for the Uniform Probate Code and other court decisions. *Stillman*, 343 F3d at 1322; *Hanson*, 200 FSupp2d at 1019; *DeWitt*, 54 P3d at 859-60; *Mearns*, 12 P3d at 1056.

[¶22.] We first address the alleged impairment of Storsve's contractual rights. In determining whether the first component is satisfied, i.e., whether there is a contractual relationship, "a party first must demonstrate that the contract gave [him] a vested interest, not merely an expectation interest." *Lincoln Benefit*, 468 FSupp2d at 1067 (citation omitted); *Hanson*, 200 FSupp2d at 1018. This Court has already determined that a beneficiary only has an expectancy interest. *Girard*, 318 NW2d at 140. Therefore, Storsve fails to meet the first component, and thus, our analysis with regards to his contractual rights ends.

[¶23.] Storsve also attempts to argue that Linda's contractual relationship with SDRS was impaired by the retroactive application of SDCL 29A-2-804. Assuming, without deciding, that Storsve may raise the rights of the policyholder, we address whether SDCL 29A-2-804 impaired Linda's vested right, if that impairment was substantial, and if so, whether it was justified.

[¶24.] First, Linda unquestionably had a contract with SDRS in which her rights were vested. *See Hanson*, 200 FSupp at 1020 (stating that insured had a

vested interest in life insurance contract). Under the contract, SDRS was required to provide the assets in Linda's retirement account to her designated beneficiary on the occasion of her death. However, the *Hanson* court held that a similar re-designation statute may have "changed the identity of the presumptive beneficiary, but [it] did not alter either party's obligations under the contract. [The insured] was required to pay premiums, and [the insurer was] required to pay benefits. Thus, the essential elements of the bargained-for exchange remain[ed] intact." 200 FSupp2d at 1020 (citation omitted); *see also Lincoln Benefit*, 468 FSupp2d at 1069.

[¶25.]    Furthermore, the *Hanson* court held that the statute "only created a default rule." 200 FSupp2d at 1020. The re-designation statute did not prevent the policyholder from maintaining an ex-spouse as the beneficiary. *Id.* Thus, the *Hanson* court concluded that the statute "did not impose the sort of 'severe' restriction that has been found to be 'substantial.'" *Id.* (citation omitted); *see also Stillman*, 343 F3d at 1322 ("[b]ecause no contractual obligation is impaired by [re-designation statute], there is no violation of the federal Contracts Clause in applying the statute here").

[¶26.]    The *Hanson* court further stated that even if it were to find that the re-designation statute substantially impaired the contractual relationship, the statute would nevertheless be upheld because "it serves significant and legitimate public purposes." *Id.* at 1020-21. The *Lincoln Benefit* court also held that such hypothetical impairment

> would nonetheless survive a constitutional challenge because the impairment is justified and reasonable in that it serves important public purposes, including promoting uniformity among state law treatment of probate and non-probate transfers

-11-

and implementing a rule of construction that reflects legislative judgment that ex-spouses often intend to change their beneficiaries.

468 FSupp2d at 1069 (citation omitted).

[¶27.]     We agree with the majority of courts that have decided the constitutionality issue and hold that SDCL 29A-2-804 does not substantially impair either Storsve's or Linda's contractual rights and if substantial impairment was found, it would be justified.  Therefore, SDCL 29A-2-804 is constitutional and was appropriately applied.

[¶28.]     Affirmed.

[¶29.]     SABERS and KONENKAMP, Justices, and O'BRIEN and BARNETT, Circuit Court Judges, concur.

[¶30.]     O'BRIEN, Circuit Court Judge, sitting for ZINTER, Justice, disqualified, and BARNETT, Circuit Court Judge, sitting for MEIERHENRY, Justice, disqualified.