(No. 37690.—

CHAMPAIGN COUNTY BANK AND TRUST CO., Admr., *et al.*, Appellees, *vs.* CHARLES V. B. JUTKINS *et al.*, Appellants.

*Opinion filed Sept. 27, 1963.—Rehearing denied Nov. 26, 1963.*

WEBBER, BALBACH & THIES, of Urbana, for appellant Frances M. Winship; APPLEMAN, ZIMMERLY & McKNELLY, of Champaign, and EUGENE F. SCOLES, of Urbana, (ROBERT D. McKNELLY, of counsel,) for other appellants.

BUSCH, HARRINGTON & PORTER, of Champaign, for appellees.

Mr. Justice Schaefer delivered the opinion of the court:

This appeal has been brought directly to this court from the decree of the circuit court of Champaign County in an action to construe the will of Francis R. Jutkins, deceased. A freehold is involved.

The case turns upon the construction of the 1957 amendment to section 46 of the Probate Act. As amended that section provides: "Unless the will expressly provides to the contrary: * * * (2) divorce or annulment of the marriage of the testator revokes every beneficial devise, legacy or interest given to the testator's former spouse in a will executed before the entry of the decree of divorce or annulment, and the will shall take effect in the same manner as if the former spouse died before the testator." Ill. Rev. Stat. 1961, chap. 3, par. 46.

Francis R. Jutkins, the testator, married Frances M. Winship on May 1, 1949, and on August 21, 1950, he executed the will in question. After directing the payment of debts, it devised and bequeathed all the testator's property to his wife, Frances M. Jutkins, provided that she be living at the time of the admission of the will to probate. Alternatively, the will provided: "If my said wife be not living at the time of the admission of this instrument to probate, then and in that event I give, devise and bequeath all the rest, residue and remainder of my property * * * of which I may die seized and possessed, to the bodily heirs of my beloved wife then surviving * * *."

Frances M. Jutkins was the mother of two children by a former marriage, Frances M. Bennett and Harry W. Winship. Both of them are still living. No children were born of her marriage with the testator.

On November 19, 1959, after section 46 was amended, the testator and Frances M. Jutkins were divorced. By the terms of the decree she resumed the name of Frances M. Winship, and she is so referred to hereafter. The divorce

decree incorporated and approved a property settlement by which Frances M. Winship received more than 50 per cent of the property owned by the parties. On October 1, 1960, the testator died, apparently by suicide. Frances M. Winship is still living.

The trial court construed the will in accordance with the literal terms of the statute as amended, and held that Frances M. Winship must be deemed to have died before the testator. It therefore directed distribution of the estate to Frances M. Bennett and Harry W. Winship, the children of Frances M. Winship by the earlier marriage, as the "bodily heirs" of Frances M. Winship.

Before section 46 was amended, divorce did not revoke a will, (*Gartin* v. *Gartin*, 371 Ill. 418; *Speroni* v. *Speroni*, 406 Ill. 28,) and Frances M. Winship has appealed from the decree on the ground that the statute as amended does not apply to wills executed before the amendment became effective. She contends also that the court erred in excluding the testimony of two witnesses: first, that of the testator's attorney, offered to show that he died believing that his will was in effect and that he was leaving all of his property to Frances M. Winship, and second, that of another witness offered for the same purpose and also to show the testator's declarations of affection for Frances M. Winship shortly before his death.

The testator was survived by two brothers, who were his heirs at law. One of them, Charles V. B. Jutkins, is the assignee of the interest of the other. He also appeals from the decree. He asserts that Frances M. Bennett and Harry W. Winship do not meet the conditions of the alternative gift over to the "bodily heirs" of the testator's "beloved wife" because Frances M. Winship was not his wife at his death, because she is in fact still alive and has no heirs, and because the designated class may be enlarged by the birth of additional children to her. He also urges that even if the gift over is valid under the letter of the statute, it must fail be-

cause it contravenes the legislative policy, since it was motivated by love and affection incident to the marital relationship. For these reasons, he contends the estate must pass under the laws of intestate succession.

Frances M. Winship invokes the principle of statutory construction that a statute applies only prospectively unless the legislative purpose that it shall be given retrospective effect is plainly expressed. The roots of the policy embodied in that principle run deep in the common law. Interestingly, some of the earliest English reports establishing the presumption against retroactive legislation involved the application of an act of Parliament to wills executed before its passage. In *Ashburnham* v. *Bradshaw,* 2 Atkyn's Reports 36 (Chancery, 1740), a will executed in 1734 contained a devise to charitable uses of the class forbidden by the statute of mortmain enacted in 1736, shortly before the testator died. The Chancellor referred the question of the validity of the devise to the law judges, all of whom certified it to be good, and the Chancellor so held. An earlier statement of the rule, although not in the form of a decision, is found in *Helmore* v. *Shuter,* 2 Shower's Reports 17 (King's Bench, 1678.) Commentators state the principle as the general rule. In 1 Bowe-Parker, Page on Wills, 71 (1960), it is said: "By the great weight of modern authority it will be presumed, in the absence of anything to show a contrary intention, that the legislature does not intend a statute to apply to a will which was executed prior to the time when the statute was passed." To the same effect is Scurlock, Retroactive Legislation Affecting Interests in Land, 103, p. 196 (1953).

When a legislative enactment affects rights that are found to be vested, or makes conduct criminal, the policy against retroactive legislation is embedded in constitutional provisions requiring due process of law and prohibiting *post facto* laws and the impairment of the obligation of contracts. Statutes that deal with the devolution of property

upon death, if enacted before death, are not ordinarily held to transgress constitutional limits because the rights of the expectant heir or legatee do not become vested until the death of the property owner. So legislation that grants the widow a right to elect to take a statutory share instead of the provision made for her by will, or alters the procedure for claiming dower by a divorced woman, has been sustained against a charge of retroactivity. See *Sturgis* v. *Ewing,* 18 Ill. 176; *Classen* v. *Heath,* 389 Ill. 183.

Some courts have extended this line of reasoning to the construction of statutes providing that a will is revoked by divorce. Because a will remains ambulatory and no rights under it can vest until death, they have held that such statutes apply to wills executed before the enactment, and even to a divorce that preceded the enactment. See *In re Ziegner's Estate,* 146 Wash. 537, 264 Pac. 12 (1928), followed in *Friedman* v. *Cohen,* 215 Ga. 859, 114 S.E.2d 24 (1960). *Contra: Grudziecki* v. *Starr,* (Tex. Civ. App.) 351 S.W.2d 381 (1961).

This argument was flatly rejected by this court in *In re Will of Tuller,* 79 Ill. 99. There the statute in question declared that a will is completely revoked by the testator's marriage after its execution. The testator made his will in 1869 and married later that year. The act took effect in 1872, and the testator died in 1874. The heirs argued that since a will is ambulatory and speaks as of the date of death, the statute should be applied "as though the law had been passed before its execution." (79 Ill. at 107.) The court rejected the argument, saying: "The question is not so much whether the statute affects rights *vested* before its passage, as, what was the intention of the legislature. A law is a rule of civil conduct, and the principle is, that it is a rule for the regulation of future conduct. It is, in the general, true, that no statute is to have a retrospect beyond the time of its commencement; for the rule and law of parliament is, that *nova constitutio futuris formam debet*

*imponere, non praeteritis.* 4 Bac. Abr. 636, Statute (C.)

"It is the doctrine applicable to all laws, that, generally, they are to be considered as prospective, and not to prejudice or affect the past transactions of the citizen. Not that the legislature can not, in some cases, make laws with a retrospective operation, but that it is not to be supposed they so intended, unless that intention has been manifested by the most clear and unequivocal expressions." 79 Ill. at 107.

The actual holding in the *Tuller* case was narrower than the contention discussed. In that case both the marriage and the execution of the will preceded the statute. The court was thus not called upon to decide whether legislation providing that a will is revoked upon a specified event would apply when the will preceded the statute and the specified event followed it. In a subsequent case, however, (*McAnnulty* v. *McAnnulty,* 120 Ill. 26, 31,) the court characterized its holding in the *Tuller* case in these terms: "The court, after discussing at some length the question whether the act cited should be extended to a will executed before its passage, finally held that it did not." We have been referred to no decision of this court, and we have found none, in which a statute providing for the revocation of a will upon marriage or divorce has been construed to apply retrospectively to a will executed prior to the statute. The discussion in the *Tuller* case, and the characterization of that case in *McAnnulty,* point the other way.

Nothing in the statute before us suggests that the legislature intended it to apply to wills executed before it became effective. Its implications are to the contrary. It does not provide a universal rule of partial revocation upon divorce. Instead it allows each testator to choose for himself whether the statute is to have any effect upon his will, for by its terms it does not apply if "the will expressly provides to the contrary."

The element of choice thus afforded is particularly important here, where the statute does not provide simply for revocation, followed by distribution under the ordinary rules of intestacy. Intestate distribution is ruled out because the will remains in effect. Any provision for the former spouse is eliminated, "and the will shall take effect in the same manner as though the former spouse died before the testator." The practical effect of the statute is thus to rewrite the will, not to revoke it.

Revocation in the full and usual sense would leave the rational plan for distribution of the estate supplied by the laws of intestacy. The statute, however, disrupts the testator's plan of disposition and substitutes another scheme that bears no logical relation to the original, a scheme that will prove rational only by accident. It declares in effect that the word "death" in a will shall mean divorce as well. Neither in fact nor in usual testamentary contemplation are the events equivalent. Considerations which lead a reasonable testator to provide a particular alternative gift if his spouse should predecease him apply only fortuitously when the spouse instead has divorced him. Provisions for minor children who are orphaned, for example, may prove senseless when the children in fact are in the custody of a living but divorced, and perhaps remarried, parent. Because such unintended results would follow from a different rule, it is consistently held, as a matter of ordinary interpretation, that provisions in a will conditioned upon the death of a spouse are not brought into play by a divorce. See 2 Simes and Smith, The Law of Future Interests, 251-52, sec. 775 (2d ed., 1956).

The statute does not express a public policy that a testator may not provide in his will for his divorced spouse. It applies not to all wills, but to individual wills, and it provides that every testator may choose whether the statute is to apply to his will. In the absence of any contrary legislative expression, it is more reasonable to read the statute

as affording that choice for the future than to impose the unpredictable scheme of distribution fixed by the statute upon wills that were executed before the choice existed. We hold, therefore, that the amended statute does not apply to the testator's will, which was executed before its effective date.

As an alternative ground to support the decree it is argued that Frances M. Winship is barred from taking under the will by the provisions of the property settlement agreement incorporated in the divorce decree. By that agreement, she generally waived and relinquished all further claim to the husband's property, including the right to inherit or take dower. The contract would operate according to its terms to cut off any rights in the husband's estate that were conferred by law. (*Dill* v. *Widman,* 413 Ill. 448.) But neither by its terms nor by its apparent intent did it waive or relinquish any voluntary gifts the husband might make, or deprive the testator of power to leave his property to his former wife. "Ordinarily a waiver of estate claim is not intended to cut off a testamentary gift— as distinguished from statutory rights— that one spouse may voluntarily make to the other. If this is the intention, it should be made clear." Lindey, Separation Agreements and Ante-Nuptial Contracts, annotated, sec. 27—1; see *Gartin* v. *Gartin,* 371 Ill. 418, 423.

The decree is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*