Joyce Alley MORSE and Omar Staton, Jr., Appellants,

v.

B. F. ALLEY, Jr., Appellee.

Court of Appeals of Kentucky.

April 30, 1982.

As Modified May 28, 1982.

Discretionary Review Denied Oct. 5, 1982.

Robert W. Kellerman, William E. Johnson, Johnson & Judy, P.S.C., Frankfort, Bradford T. Garrison, Nicholasville, for appellants.

C. Edward Hastie, Hastie, Murray & Carter, Lexington, for appellee.

Before HAYES, C. J., and GANT and McDONALD, JJ.

HAYES, Chief Judge:

This is an appeal from a ruling of the Jessamine Circuit Court which determined that the last will and testament of Edith Staton, deceased, could not be admitted to probate because it was revoked by her divorce which was granted subsequent to the date of execution of the tendered document.

On September 19, 1980, the appellant, Joyce Alley Morse, tendered to the Jessamine District Court a document which was the last will and testament of Edith Staton, deceased. Edith Staton executed the document on March 9, 1967, at which time she was married to Omar Staton, Sr., father of Omar Staton, Jr., an appellant here. The controversy in this case centers around KRS 394.095, which was enacted by the Kentucky General Assembly in 1970 and states as follows:

Every will shall be revoked by the divorce of the person who made the will, except a will made in exercise of a power of appointment when the estate thereby appointed would not, in default of such appointment, pass to the heir, personal representative, or next of kin of the person who made the will, and except a will which made no bequest or devise to the former spouse.

The last phrase of the above-quoted statute was added by a recent legislature, effective July 15, 1980, and has no applicability here.

Omar Staton, Sr., and Edith Staton were divorced on May 5, 1972, by judgment of the Jessamine Circuit Court. On May 1, 1980, Edith Staton died, having remained unmarried following her divorce from Staton, Sr. The tendered will was not made in exercise of a power of appointment.

The pertinent provisions of Mrs. Staton's will are as follows:

Third: I give and bequeath to my son, B. Franklin Alley, Jr., if he survives me the sum of One ($1.00) Dollar. I intentionally limit the amount bequeathed to him because I feel that said son, B. Franklin Alley, Jr., has been generously and amply provided with financial security by his father, my former husband, and that he, therefore, needs no help from my estate.

Fourth: I give and bequeath to my husband, Omar Staton, Sr., if he survives me, the sum of Two Hundred ($200.00) Dollars. Should said Omar Staton, Sr., predecease me, the bequest under this article is to lapse and to become part of the residuary estate.

Fifth: All the rest, residue and remainder of the property which I may own at the time of my death, real, personal and mixed, tangible and intangible, of whatsoever nature and wheresoever situated, I bequeath and devise in fee to my daughter, Joyce Alley Morse, and my son, Omar Staton, Jr., share and share alike.

At the time the will was tendered, a subscribing witness, Charlotte Calico, testified as to the competency of the testatrix at the time of the will's execution. However, on December 3, 1980, the Jessamine District Court denied probate of the will, relying upon KRS 394.095.

Thereafter, the appellants herein filed an action in the Jessamine Circuit Court requesting that court to order the Jessamine District Court to admit said document to probate as the last will and testament of Edith Staton. On May 22, 1981, the Jessamine Circuit Court issued a memorandum opinion denying petitioner's request. On June 18, 1981, findings of fact, conclusions of law, and a judgment of the Jessamine

Circuit Court were entered to that effect. This appeal followed. The question presented here is whether the Jessamine Circuit Court properly ruled that KRS 394.-095, effective 1970, served to revoke the entire will of Edith Staton when said will was executed before the enactment of the statute.

Appellants' first argument is that in denying probate of Edith Staton's will, the court gave retroactive application to KRS 394.095. The will in question was executed in 1967, KRS 394.095 was enacted in 1970, and the divorce occurred in 1972. It is the appellants' contention that KRS 394.095 should be applied only prospectively, so that the automatic revocation would apply only to wills executed after 1970, the date of the enactment of the legislation. In support of their argument, the appellants rely on Article 1, Section 10, of the Constitution of the United States of America and Section 19 of the Constitution of the Commonwealth of Kentucky which prohibit the states from passing any *ex post facto* law. In addition, KRS 446.080(3) states, "No statute shall be construed to be retroactive, unless expressly so declared."

The precise question of whether KRS 394.095 should apply to wills executed before the enactment of the statute has never been addressed in Kentucky. Appellants rely on two cases from foreign jurisdictions which hold that statutes revoking wills upon divorce do not apply retrospectively. However, as the appellee points out, in neither case did the statutes involved contain language applying to "every will" as in the Kentucky statute.

*Champaign County Bank and Trust Company v. Jutkins*, 29 Ill.2d 253, 193 N.E.2d 779 (1963), construed an Illinois statute which applies not to all wills, but to individual wills. It provides that every testator may choose whether the statute is to apply to his or her will. The court in *Champaign* noted that the legislature can make laws with retrospective operation where such is clearly intended, but that "nothing in the statute before us suggests that the legislature intended it to apply to wills executed

before it became effective." *Id.* 193 N.E.2d at 782.

The remaining case cited by appellants, *De Mars v. Slama*, 91 Nev. 603, 540 P.2d 119 (1975), is similar to the *Champaign* case in that the Nevada statute therein construed does not contain such words as "every will" or "all wills". To the contrary, the Nevada statute indicates that the Nevada legislature did not intend for its statute to be applied retroactively. The statute provides that divorce revokes devises to former spouses in a will executed prior to divorce, unless a different provision is made during the divorce proceedings by the parties with the approval of the court or by the court alone.

Appellee cites the case, *Friedman v. Cohen*, 215 Ga. 859, 114 S.E.2d 24 (1960), which construed a statute similar to Kentucky's. The Georgia statute provides that the total divorce of a testator subsequent to the execution of his will serves to revoke the will unless there is a provision contained in the will to the contrary. The Georgia statute explicitly applies to "all wills", and was found applicable to wills executed prior to as well as after the passage of the statute. Although the Georgia statute applying to "all wills" is not identical to Kentucky's statute applying to "every will", a fair comparison can be made between the two statutes as to the issue of whether the statutes were intended to be construed retroactively.

Appellee's argument that applying KRS 394.095 to Edith Staton's will is not an *ex post facto* application of a law in violation of the state and federal constitutions is likewise well taken. KRS 394.095, if given retroactive effect, would not interfere with any vested rights of the prospective takers under Edith Staton's will since "the rights of the expectant heir or legatee do not become vested until the death of the property owner." *Jutkins, supra* 193 N.E.2d at 782. In further support of this point, appellee cites a Kentucky case, *Arciero v. Hager*, Ky., 397 S.W.2d 50 (1965), which dealt with the question of determining whether an adopted child may inherit. The Kentucky court held at 53 and 54, that "the legisla-

ture may modify the laws of descent without impairing the rights of persons who would have inherited under an earlier law, so long as that modification occurs before the actual date of the inheritance." Although a revocation statute was not involved in the *Arciero* case, it does serve to illustrate appellee's argument, namely, that Edith Staton had approximately eight (8) years following her divorce to make a new will, but did not.

■ By using the language "every will" in KRS 394.095, the legislature has declared its intention that this revocation statute should apply both retroactively and prospectively. Furthermore, this is not an *ex post facto* application of a law in violation of the state and federal constitutions, since no property rights had vested in the takers under Edith Staton's will at the time of her divorce. It is axiomatic that a will speaks from the date of death of the testatrix.

Appellants' second argument is that, if applicable at all, KRS 394.095 should serve to revoke only the bequests and devises made to a former spouse, and not to revoke the entire will. In support of this argument, appellants rely on various cases from other jurisdictions. However, every case cited by appellants either does not construe a statute at all or construes a statute which expressly provides for partial revocation of the will as to provisions relating to a former spouse.

Appellee's response is that the language of KRS 394.095 states that *every will* is revoked by the testator's divorce, with no mention being made of partial revocation. The only exceptions included in the statute are: (1) where a will is made in exercise of a power of appointment and the estate appointed would not pass to the heir, personal representative, or next of kin of the person who made the will in the event of the default of such appointment, and (2) where a will contains no bequest or devise to the former spouse. Neither of these exceptions apply here.

■ Although there is no Kentucky case precisely on point, appellee cites *Cox v.*

*Harrison,* Ky., 535 S.W.2d 78 (1975), as dispositive of the question as to whether an entire will, as opposed to a portion of a will, is invalidated by the effect of KRS 394.095. In *Cox,* the then Court of Appeals ruled that the will of a nonresident, probated by a foreign court, was properly probated in Kentucky as to personalty located in the Commonwealth but should not have been admitted to probate for the purpose of devising real property located in Kentucky since under the Kentucky statute, KRS 394.095, the will was executed prior to the testator's divorce and was thereby revoked. The court stated:

> The will in question was executed prior to the final decree of divorce. The will was revoked by operation of KRS 394.095. Inasmuch as the will was revoked by divorce, it could not have been admitted to probate if it had been offered originally in Kentucky. *Id.* at 79.

It is evident from the language of KRS 394.095, that the entire will is revoked in the event of a divorce subsequent to the execution of that will since that statute contains no language which would limit its effect to only a part of the will.

Appellants' third argument is that the intent of the testatrix, as evidence by her will, should control the interpretation of her will. Edith Staton explicitly stated in her will that she intentionally limited her bequest to B. Franklin Alley, Jr. to the sum of one dollar ($1.00) because he had been generously provided for by her first husband, B. F. Alley, Sr. However, as the appellee points out, the rule of construction concerning the intent of the testatrix is just that—a rule of construction—and, therefore, is only relevant in the interpretation of a valid will. In the cases cited by appellants espousing this rule of construction, there was never any issue as to the validity of the' will, only as to its interpretation.

Finally, appellants contend that if there is a will, there is a presumption against intestacy. However, this presumption is not relevant to the issue in this case since, if the will is not valid under KRS 394.095, presumptions, as other rules of construc-

tion, never come into play. Again, in none of the cases cited by the appellants was the validity of the will at issue.

The judgment is affirmed.

All concur.