2022 IL App (1st) 211533

First District
Third Division
November 16, 2022

No. 1-21-1533

|  |  |  |
|---|---|---|
| BEVERLY J. SHAW, | ) | |
| | ) | |
| Plaintiff and Counterdefendant-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | Appeal from the Circuit Court |
| U.S. FINANCIAL LIFE INSURANCE COMPANY, a | ) | of Cook County. |
| Foreign Corporation; MICHELLE SHAW McKAY; | ) | |
| TERRANCE SHAW; and PHILLIP SHAW, | ) | No. 20 CH 04851 |
| | ) | |
| Defendants | ) | The Honorable |
| | ) | Anna M. Loftus, |
| (Terrance Shaw, Defendant and Counterplaintiff- | ) | Judge Presiding. |
| Appellant). | ) | |

JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Gordon and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1    The instant appeal requires us to determine whether a statute governing the effect of a judgment for dissolution of marriage on a life insurance policy should be applied retroactively. Plaintiff, Beverly Shaw (Beverly),[1] is the former wife of decedent Tyrone Shaw (Tyrone). During their marriage, Beverly was listed as the beneficiary of Tyrone's life insurance policy, with Tyrone's three children, defendants Terrance Shaw (Terrance), Michelle Shaw McKay (Michelle), and Phillip Shaw (Phillip), named as contingent beneficiaries.[2] When Beverly and Tyrone dissolved their marriage, however, the judgment for dissolution of marriage

---

[1]As most of the parties share the same surname, we refer to them by their first names.
[2]Terrance is the only child involved in the instant appeal.

(dissolution judgment) was silent as to the life insurance policy. Several years after the entry of the dissolution judgment, the Illinois legislature enacted a statute which provided that a dissolution judgment generally operated to revoke an ex-spouse's status as a beneficiary under a previously issued life insurance policy. See 750 ILCS 5/503(b-5) (West 2018). A year later, Tyrone died. Beverly sought to collect under the life insurance policy, but the insurer, defendant U.S. Financial Life Insurance Company (U.S. Financial), declined payment, citing the statute. Beverly filed a declaratory judgment action against the insurer and the children, seeking a declaration that she was entitled to the proceeds of the life insurance policy. The circuit court granted summary judgment in Beverly's favor, and Terrance now appeals. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 2                                    BACKGROUND

¶ 3        The facts relevant to the instant appeal are largely undisputed. Beverly and Tyrone were married in 1991. Terrance and Michelle were Tyrone's children from a previous marriage, while Phillip was born during the marriage; all three children were adults at the time the marriage was dissolved.

¶ 4        In 2004, U.S. Financial issued a life insurance policy to Tyrone, which contained a death benefit of $250,000, payable upon Tyrone's death. Beverly was named as the primary beneficiary; under "Relationship," the policy stated "wife." The contingent beneficiary under the policy was listed as "all children of insured." All premiums due under the policy were paid in full as of the date of Tyrone's death in 2020, and there is no dispute that the policy was in full force and effect.

¶ 5        In March 2016, a dissolution judgment was entered in the circuit court of Cook County, dissolving the marriage of Beverly and Tyrone. The judgment, which was in the form of a

preprinted form with handwritten additions, was silent regarding the policy. The dissolution judgment was modified in April 2017, but the modification did not address life insurance.

¶ 6        In 2018, the Illinois legislature passed Public Act 100-871 (eff. Jan. 1, 2019), which amended section 503 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503 (West 2016)) by adding paragraphs under subsection (b-5) (the statute). This statute, which became effective January 1, 2019, provides that the designation of a former spouse as beneficiary of a life insurance policy entered into prior to a dissolution judgment is no longer effective after the entry of the dissolution judgment unless the dissolution judgment designates the former spouse as beneficiary, the insured redesignates the former spouse as beneficiary, or the former spouse is to receive the proceeds in trust for a child or dependent of either former spouse. See *id.* § 503(b-5)(2).

¶ 7        Tyrone died in February 2020, and Beverly made a claim under the life insurance policy as primary beneficiary of the policy. While U.S. Financial acknowledged that the policy was valid and the proceeds were payable to an appropriate beneficiary, U.S. Financial refused to pay the proceeds to Beverly, citing the statute.

¶ 8        In July 2020, Beverly filed a complaint for declaratory judgment in the circuit court of Cook County, seeking a declaration that she was entitled to the proceeds from the life insurance policy as the statute was not in effect at the time the dissolution judgment was entered.

¶ 9        U.S. Financial filed an appearance, followed by an answer and an interpleader counterclaim. U.S. Financial also filed a motion for an order authorizing it to deposit the funds at issue with the clerk of the circuit court and discharging it from any liability in the instant case. The circuit court granted its motion (although it ordered the funds to be deposited at a

bank rather than with the clerk of the circuit court) and dismissed U.S. Financial from the litigation with prejudice.

¶ 10    Michelle and Phillip, two of Tyrone's children, did not file appearances, and the circuit court entered findings of default against them for failure to appear or answer the complaint. Terrance, however, filed an appearance, answer, and affirmative defenses. Terrance also filed a counterclaim, seeking a declaration that he was the lawful beneficiary of the life insurance policy and, since Michelle and Phillip had been found in default, that he was entitled to the entirety of the proceeds.

¶ 11    In October 2020, Beverly filed a motion for summary judgment on her complaint and on Terrance's counterclaim, claiming that the statute did not apply to the instant case, as it was not in effect at the time the dissolution judgment was entered.

¶ 12    While the motion for summary judgment was pending, the circuit court vacated the default entered against Michelle, and Michelle filed an appearance. Beverly then filed a motion for summary judgment against Michelle, raising the same claims as in her previous motion for summary judgment. In turn, Michelle also filed a motion for summary judgment, claiming that the statute revoked Beverly's status as a beneficiary and, therefore, Michelle and Terrance were entitled to the proceeds of Tyrone's life insurance policy. Terrance subsequently also filed a motion for summary judgment which was substantively similar to Michelle's motion for summary judgment. The circuit court was thus presented with four motions for summary judgment: two filed by Beverly, one filed by Michelle, and one filed by Terrance, all of which concerned the applicability of the statute to Tyrone's life insurance policy.

¶ 13    On August 10, 2021, the circuit court entered an order granting Beverly's motion for summary judgment in part and denying Michelle's and Terrance's motions for summary

judgment. The circuit court found that the statute at issue was a substantive, not procedural, one, meaning that it had only prospective effect and could not be applied retroactively. The circuit court further found that the operative date for purposes of application of the statute was the date of the dissolution judgment, not the date of the insured's death, meaning that the statute would not apply here, where the dissolution of Beverly and Tyrone's marriage preceded the effective date of the statute.

¶ 14     While the circuit court agreed with Beverly that the statute did not apply, the circuit court, however, found that there were several outstanding affirmative defenses raised by Terrance that prevented the circuit court from directing that the proceeds of the policy be paid to Beverly. The circuit court noted that Terrance had raised affirmative defenses of unclean hands and unjust enrichment, either of which could result in Beverly being deprived of the proceeds of the policy, but found that these affirmative defenses were "woefully underpled." The circuit court therefore *sua sponte* dismissed Terrance's affirmative defenses pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2020)) without prejudice and with leave to replead. The circuit court, however, indicated that "[i]f the defenses are not repled, then the litigation would be terminated." The circuit court gave Terrance 28 days to replead his affirmative defenses and set the matter for a status hearing on September 14, 2021.

¶ 15     On September 14, 2021, the circuit court entered an order in which it found that Terrance had not amended his affirmative defenses and had indicated to the circuit court that he did not require any additional time to do so. The circuit court accordingly found "no bar to the disbursement of the life insurance proceeds" to Beverly and entered judgment in favor of Beverly. The circuit court further ordered the disbursement of the entirety of the life insurance proceeds to Beverly. Finally, the circuit court dismissed U.S. Financial's interpleader

counterclaim and Terrance's counterclaim with prejudice and found no just reason to delay enforcement or appeal of its order.

¶ 16    On September 30, 2021, Terrance filed a motion to reconsider the "order entered on August 10, 2021," arguing that the circuit court had misapprehended the law in finding that the statute did not apply. On November 23, 2021, the circuit court denied the motion to reconsider, and this appeal follows.

¶ 17                                    ANALYSIS

¶ 18    On appeal, the sole issue raised by Terrance is the applicability of the statute to Tyrone's life insurance policy. Prior to addressing that issue, however, we must consider our jurisdiction to decide the instant appeal, as Beverly contends that Terrance's notice of appeal was untimely. We note that we previously denied a motion to dismiss the appeal on the same basis. Our prior interlocutory order, however, is not dispositive, as we may revisit the issue of our jurisdiction at any time. See *In re Application of the County Treasurer & Ex Officio County Collector of Cook County*, 308 Ill. App. 3d 33, 47 (1999) (the denial of a motion to dismiss an appeal is not final and "the question of our jurisdiction to hear a case may and indeed must be revisited before final disposition of the appeal").

¶ 19                            *Appellate Jurisdiction*

¶ 20    The question of whether we have jurisdiction over an appeal presents a question of law, which we review *de novo*. *In re Marriage of Demaret*, 2012 IL App (1st) 111916, ¶ 25; *In re Marriage of Gutman*, 232 Ill. 2d 145, 150 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co. v. Performance Aircraft Leasing, Inc.*, 2019 IL App (1st) 181031, ¶ 62.

¶ 21    Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 2017) provides that a notice of appeal must be filed with the clerk of the circuit court no more than 30 days "after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed," within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against the judgment. When an appellant fails to file a timely notice of appeal, the appellate court lacks jurisdiction to hear the appeal, and the appeal must be dismissed. *Oruta v. Biomat USA, Inc.*, 2017 IL App (1st) 152789, ¶ 5.

¶ 22    In this case, the circuit court entered an order on August 10, 2021, denying Terrance's and Michelle's motions for summary judgment and granting Beverly's motions for summary judgment in part. The circuit court, however, found that Beverly's right to the insurance proceeds was dependent on Terrance's affirmative defenses, making summary judgment on that issue inappropriate, and gave Terrance leave to amend his affirmative defenses. On September 14, 2021, after Terrance failed to do so, the circuit court entered judgment in Beverly's favor and directed payment of the proceeds to her.[3] On September 30, 2021, Terrance filed a motion to reconsider the "order entered on August 10, 2021"; this motion did not make any reference to the September 14 order. The motion was denied on November 23, 2021, and Terrance filed a notice of appeal on November 29, 2021. Beverly contends that, since the September 30 motion to reconsider did not expressly seek reconsideration of the September 14 order, it was not a "timely posttrial motion directed against the judgment" and,

---

[3]We note that Beverly suggests that "the lower court never disposed of Terrance's cross claim against Michelle." Our review of the record on appeal reveals, however, that the only claim Terrance raised against Michelle was in his counterclaim, which was expressly dismissed with prejudice by the circuit court in its September 14 order. Accordingly, the September 14 order disposed of all outstanding matters, and appeal was permitted under Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994). Even if Beverly was correct, however, the circuit court's order contained language permitting appeal under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), as Beverly acknowledges.

therefore, Terrance's November 29 notice of appeal was untimely since it was not filed within 30 days of the September 14 order. We do not find this argument persuasive.

¶ 23    The circuit court's September 14 order did not make any substantive rulings or findings; it merely effectuated its earlier August 10 order after determining that Terrance would be making no additional allegations in support of his affirmative defenses. This was not a surprise—in fact, it was exactly what the circuit court indicated that it would do when it noted in its August 10 order that "[i]f the defenses are not repled, then the litigation would be terminated." Thus, the fact that Terrance's motion to reconsider addressed the August 10 order, which was the order in which the circuit court made its substantive findings as to the merits of the summary judgment motions, in no way suggests that the motion was not ultimately "directed against" the final judgment—the declaration that Beverly was the sole lawful beneficiary of the life insurance policy and the award of the proceeds from the policy. While Terrance could have expressly listed both orders in his motion to reconsider, we cannot find that his failure to list the September 14 order renders his notice of appeal untimely under the circumstances present here.

¶ 24    We similarly find unpersuasive Beverly's reliance on *In re Marriage of Waddick*, 373 Ill. App. 3d 703 (2007), in support of her jurisdictional argument. While Beverly claims that this case is "[d]irectly on point and fully dispositive," we find the case to be wholly distinguishable from the situation present in the instant appeal. In that case, the respondent filed a motion to reconsider the circuit court's decision on certain matters in a dissolution proceeding, but the motion was filed prior to the court entering a dissolution judgment. *Id.* at 704-05. The motion to reconsider was denied several months after the entry of the dissolution judgment, and the respondent filed a notice of appeal within 30 days of that denial. *Id.* at 705. On appeal, the

appellate court found that it lacked jurisdiction, as the motion to reconsider could not be considered a timely postjudgment motion where it was filed prior to the judgment being entered and was not directed against that judgment. *Id.* at 707. Here, by contrast, as Beverly acknowledges, Terrance filed his motion to reconsider *after* the entry of the September 14 final judgment. Additionally, unlike the order at issue in *Waddick*, the September 14 order did not contain any rulings or findings that were not already present in the earlier order—it simply finalized the court's earlier decision. We therefore cannot find that *Waddick* supports Beverly's jurisdictional argument and conclude that we have jurisdiction over the instant appeal.[4]

¶ 25                               *Standard of Review*

¶ 26        The order at issue on appeal resulted from the circuit court's grant of summary judgment in favor of Beverly. A circuit court is permitted to grant summary judgment only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The circuit court must view these documents and exhibits in the light most favorable to the nonmoving party. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004). We review a circuit court's decision to grant a motion for summary judgment *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). As noted, *de novo* consideration means we perform the same analysis that a trial judge would perform. *XL Specialty Insurance Co.*, 2019 IL App (1st) 181031, ¶ 62.

---

[4]We also decline Beverly's request to strike Terrance's brief due to improper case citations, as the case information provided by Terrance enables us to locate each of the cases on which he relies. We caution Terrance's counsel, however, that citations for cases filed prior to July 1, 2011, must be to the Illinois Official Reports. See Ill. S. Ct. R. 6 (eff. July 1, 2011).

¶ 27　　Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt. *Id.* ¶ 63. However, mere speculation, conjecture, or guess is insufficient to withstand summary judgment. *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The party moving for summary judgment bears the initial burden of proof. *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007). The movant may meet his burden of proof either by affirmatively demonstrating that some element of the case must be resolved in his favor or by establishing that there is an absence of evidence to support the nonmoving party's case. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. *Schrager v. North Community Bank*, 328 Ill. App. 3d 696, 708 (2002) (citing *Luu v. Kim*, 323 Ill. App. 3d 946, 952 (2001)).

¶ 28　　Where, as here, the parties have filed cross-motions for summary judgment, "they agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. The mere filing of such cross-motions, however, does not establish that there is no genuine issue of material fact, nor does it obligate a court to render summary judgment. *Id.* We also note that we may affirm on any basis appearing in the record, whether or not the circuit court relied on that basis or its reasoning was correct. *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992).

¶ 29　　　　　　　　　　　　　　　　*Statute at Issue*

¶ 30　　As noted, the sole issue on appeal is whether the statute concerning the effect of a dissolution judgment on life insurance policies operates to revoke Beverly's status as the beneficiary of Tyrone's life insurance policy. We begin, then, with an overview of the statute at issue.

¶ 31        Prior to 2018, the Act was silent as to the effect a dissolution judgment had on a previously issued life insurance policy. While the Probate Act of 1975 provided that a dissolution judgment automatically operated to revoke an ex-spouse's status in a will (755 ILCS 5/4-7(b) (West 2018)), there existed no similar provisions concerning life insurance policies. Accordingly, an ex-spouse remained the beneficiary under their former spouse's life insurance policy even after the entry of a dissolution judgment. See *Allton v. Hintzsche*, 373 Ill. App. 3d 708, 711 (2007); *Williams v. Gatling*, 186 Ill. App. 3d 21, 22 (1989).

¶ 32        In 2018, the legislature amended section 503 of the Act, which governs disposition of property in dissolution proceedings, by adding several paragraphs to subsection (b-5). See Pub. Act 100-871 (eff. Jan. 1, 2019) (amending 750 ILCS 5/503). The amended subsection (b-5) contains five paragraphs discussing life insurance policies, including subsection (b-5)(2), the provision at issue in the instant case. 750 ILCS 5/503(b-5) (West 2018). Subsection (b-5)(2) provides:

> "(2) If a judgment of dissolution of marriage is entered after an insured has designated the insured's spouse as a beneficiary under a life insurance policy in force at the time of entry, the designation of the insured's former spouse as beneficiary is not effective unless:
>
> (A) the judgment designates the insured's former spouse as the beneficiary;
>
> (B) the insured redesignates the former spouse as the beneficiary after entry of the judgment; or
>
> (C) the former spouse is designated to receive the proceeds in trust for, on behalf of, or for the benefit of a child or a dependent of either former spouse." *Id.* § 503(b-5)(2).

If a designation is not effective pursuant to subsection (b-5)(2), the proceeds are payable to the named alternative beneficiary, if any, or to the insured's estate. *Id.* § 503(b-5)(3).

¶ 33    The amendment was not the subject of extensive debate in the legislature, although both the Senate and House of Representatives (House) sponsors of the bill made comments about their interpretation of the statute. In the Senate, Senator Chuck Weaver described it as "ensur[ing] that a person going through a divorce isn't penalized for forgetting about an old insurance policy stuck in a drawer and thereby reduces litigation and clarifies who should be *** the beneficiary." 100th Ill. Gen. Assem., Senate Proceedings, Apr. 11, 2018, at 39 (statements of Senator Weaver). In the House, Representative Steven Andersson indicated that the bill amended the Act "to provide for what happens in the event of the dissolution of marriage and after the dissolution a spouse fails to correct who the beneficiaries are on the life insurance policy." 100th Ill. Gen. Assem., House Proceedings, May 21, 2018, at 37 (statements of Representative Andersson).

¶ 34                                    *Operative Act*

¶ 35    In determining whether the statute applies in the instant case, we first consider whether the "operative act" triggering the application of the statute is the entry of the dissolution judgment or Tyrone's death. Beverly claims that the operative act is the entry of the dissolution judgment, so the statute does not apply since it became effective only after that date. Terrance, by contrast, claims that the operative act is Tyrone's death, so the statute applies since the statute became effective prior to that date.

¶ 36                                Language of Statute

¶ 37    We begin by examining the language of the statute itself. "The fundamental objective of statutory construction is to ascertain and give effect to the intent of the legislature." *1010 Lake*

*Shore Ass'n v. Deutsche Bank National Trust Co.*, 2015 IL 118372, ¶ 21 (citing *Bettis v. Marsaglia*, 2014 IL 117050, ¶ 13). "The most reliable indicator of legislative intent is the statutory language, given its plain and ordinary meaning." *Id.* (citing *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 160 (2010)). "A reasonable construction must be given to each word, clause, and sentence of a statute, and no term should be rendered superfluous." *Id.* (citing *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14). When statutory language is plain and certain, the court is not free to give it a different meaning, and the court may not depart from the statutory language by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Kalkman v. Nedved*, 2013 IL App (3d) 120800, ¶ 12.

¶ 38     In this case, the statute itself does not provide any clear guidance as to whether it is the date of the dissolution judgment or the date of the death which is the operative one. We note that the statute is located within the Act, which governs dissolution proceedings and, more specifically, within section 503 of the Act, which governs the division of property in the context of such proceedings. Thus, a reasonable interpretation would be that the statute also concerns actions taken at the time of the dissolution of the marriage, not a later death. The circuit court further noted the statute's use of the present tense: "If a judgment of dissolution of marriage *is* entered," a designation of the former spouse as beneficiary is not effective unless certain conditions are satisfied. (Emphasis added.) 750 ILCS 5/503(b-5)(2) (West 2018). The statute notably does not provide, for instance, that the designation is ineffective if a judgment of dissolution of marriage *has been* entered. See *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 17 (noting the use of the phrase " 'has been convicted' " supported application of the statute to past convictions). The use of the present

tense further supports an interpretation that the statute applies at the time of the dissolution proceedings, not at some later time.

¶ 39    By contrast, however, the nature of life insurance policies suggests that the insured's death is the operative event. An insured may generally change the beneficiary on their life insurance policy "on their own whim" so long as they reserve the right to do so in the policy.[5] *Perkins v. Stuemke*, 223 Ill. App. 3d 839, 842 (1992). Accordingly, a beneficiary's right to the proceeds of a life insurance policy does not normally vest until the insured dies. *Id.* The beneficiary instead merely retains an expectancy interest. *Principal Mutual Life Insurance Co. v. Juntunen*, 189 Ill. App. 3d 224, 227 (1989). In light of the fluid nature of life insurance policies, then, a reasonable reading of the statute in the instant case would be that the statute merely operates in the same way as though the insured had revoked the former spouse's beneficiary status himself and that it is the date of the insured's death that fixes the ultimate rights of the parties. Again, the language of the statute does not foreclose this reading: the former spouse may be retained as beneficiary if "the insured redesignates the former spouse as the beneficiary after entry of the judgment" (750 ILCS 5/503(b-5)(2)(B) (West 2018)), which by its own terms applies only after the time of the dissolution judgment. Thus, the determination of the beneficiary may be decided well after the entry of the dissolution judgment and is only finalized upon the insured's death, when no further changes may be made.

¶ 40    Since the statute itself provides limited guidance, both parties rely on what they claim are analogous statutes in other contexts and other jurisdictions in order to inform our analysis. Beverly relies on Illinois cases involving wills, while Terrance relies on foreign cases involving life insurance policies.

---

[5]The parties agree that Tyrone's policy permitted him to change his beneficiary at any time.

¶ 41                                    Illinois Cases

¶ 42        In support of her argument that the entry of the dissolution judgment is the operative act,

Beverly cites three Illinois cases involving revocations of wills. In *In re Will of Tuller*, 79 Ill.

99 (1875), our supreme court considered an 1872 statute which revoked any will executed prior

to a testator's marriage. There, the decedent, a widow with three children, executed a will in

1869. *Id.* at 100. Later that year, she remarried; her marriage to her new husband ended in

1873, and she died in 1874. *Id.* at 100-01. The question presented to the supreme court was the

effect of her marriage on her previously executed will, given the passage of the 1872 statute.

The supreme court noted that one of the arguments in support of applying the statute—and

therefore revoking her will—was the fact that, "as the will did not take effect, nor were any

rights acquired under it, until the testatrix's death, its validity depends upon the law as it then

stood at the time of her death" and thus, it was irrelevant that the statute was enacted after the

execution of the will. *Id.* at 106-07. The supreme court, however, found this argument

unpersuasive, as the legislature had expressed no indication that it intended the statute to

"prejudice or affect the past transactions of the citizen." *Id.* at 107. The supreme court

consequently found that the statute did not apply to revoke the decedent's will. *Id.* at 107-08.

Later, in *McAnnulty v. McAnnulty*, 120 Ill. 26, 31 (1887), the supreme court discussed *Tuller*

and found that "[t]he court, after discussing at some length the question whether the act cited

should be extended to a will executed before its passage, finally held that it did not."

¶ 43        In 1957, the Probate Act was amended to provide that, unless the will provided to the

contrary, the dissolution or annulment of a testator's marriage revoked every beneficial devise,

legacy, or interest given to the testator's former spouse in a will executed before the entry of

the dissolution judgment. Ill. Rev. Stat. 1961, ch. 3, ¶ 46. Prior to that amendment, a dissolution

judgment did not revoke a will. *Champaign County Bank & Trust Co. v. Jutkins*, 29 Ill. 2d 253, 255 (1963). Our supreme court interpreted this statute in *Jutkins*, to determine if it applied where a marriage was dissolved after the amendment but the will was executed prior to the amendment. The supreme court noted that some states had found that such statutes applied to wills executed prior to the enactment, on the theory that a will is capable of being altered and no rights under it can vest until death. *Id.* at 257. The supreme court, however, found that it had previously "flatly rejected" this argument in *Tuller*. *Id.* The supreme court noted that, in *Tuller*, both the marriage and the execution of the will preceded the statute and that the *Tuller* court "was thus not called upon to decide whether legislation providing that a will is revoked upon a specified event would apply when the will preceded the statute and the specified event followed it." *Id.* at 258. The supreme court nevertheless concluded that nothing in the statute suggested that the legislature intended it to apply to wills executed before the effective date of the amendment and "[i]ts implications are to the contrary." *Id.* The supreme court, therefore, found that the amendment did not apply to the testator's will. *Id.* at 260.

¶ 44                                  Foreign Cases

¶ 45        In support of his argument that the date of Tyrone's death is the operative act, Terrance cites a number of foreign cases considering the effect of dissolution judgments on life insurance policies. Many of these cases arose after the 1990 amendment of the Uniform Probate Code, which included a provision revoking beneficiary designations to a former spouse upon entry of a dissolution judgment. See Unif. Probate Code § 2-804 (Unif. Law Comm'n 2010); *Sveen v. Melin*, 584 U.S. ___, ___, 138 S. Ct. 1815, 1819 (2018). According to the United States Supreme Court, "[t]he underlying idea was that the typical decedent would no more want his former spouse to benefit from his pension plan or life insurance than to inherit

under his will. A wealth transfer was a wealth transfer—and a former spouse (as compared with, say, a current spouse or child) was not likely to be its desired recipient." *Sveen*, 584 U.S. at ___, 138 S. Ct. at 1819. The *Sveen* Court calculated that, at the time of its decision, 26 states had adopted laws substantially similar to the Uniform Probate Code.[6] *Id.* Naturally, conflicts arose as to the applicability of such statutes, leading to a number of cases from various jurisdictions construing the statutes. As relevant to the instant appeal, some of these cases provide the same sequence of events as is present here, namely, (1) marriage, (2) life insurance policy designating spouse as beneficiary, (3) dissolution judgment, (4) enactment of legislation, and (5) death of insured. While we do not purport to present an exhaustive overview of each of the cases here, we briefly address the cases that Terrance relies most heavily on in support of his argument on appeal, as well as the ones our research has shown are most helpful to our analysis.[7]

¶ 46     We note that the cases cited by Terrance support his view that such statutes apply to revoke beneficiary designations even where the statute at issue was enacted after the date of the dissolution judgment. See, *e.g.*, *Meier v. Burnsed*, No. 2019-000518, 2022 WL 4488505 (S.C. Ct. App. Sept. 28, 2022); *Stillman v. Teachers Insurance & Annuity Ass'n College Retirement*

---

[6]The statute at issue here is not one of those 26. It was enacted after the date of the *Sveen* decision, and its language is not identical to that of the Uniform Probate Code.

[7]We have no need to address cases that do not follow the fact pattern at issue in the instant case, nor those cases that rely on statutory provisions expressly providing for the applicability of the statute to cases arising after the entry of the dissolution judgment. See, *e.g.*, *Sveen*, 584 U.S. at ___, 138 S. Ct. at 1821 (statute enacted prior to entry of dissolution judgment); *Hertzske v. Snyder*, 2017 UT 4, ¶ 3, 390 P.3d 307 (statute enacted prior to marriage); *In re Estate of DeWitt*, 54 P.3d 849, 856 (Colo. 2002) (*en banc*) (statute expressly provided it would apply to decedents dying after the effective date of the statute); *Stanford v. Massachusetts Mutual Life Insurance Co.*, No. 130 C 002971B, ¶ 16, 2016 Nev. Dist. Lexis 2360 (Mar. 14, 2016) (statute expressly provided it would apply to decedents dying after a certain date, regardless of the date of the dissolution judgment); *Vasconi v. Guardian Life Insurance Co. of America*, 590 A.2d 1161, 1165 (N.J. 1991) (no statute at issue, interpretation of terms of marital settlement agreement).

*Equities Fund*, 343 F.3d 1311 (10th Cir. 2003) (applying Utah law); *American Family Life Assurance Co. of Columbus v. Parker*, 178 N.E.3d 859 (Mass. 2022); *Thrivent Financial for Lutherans v. Andronescu*, 2013 MT 13, 368 Mont. 256, 300 P.3d 117; *Buchholz v. Storsve*, 2007 SD 101, 740 N.W.2d 107. This uniformity in law is slightly misleading for our purposes, however, as all of the statutes at issue were modeled after the Uniform Probate Code. This is highly relevant, as the Uniform Probate Code contained a provision that any "rule of construction or presumption" applied to instruments executed prior to the effective date of the statute absent a clear indication of a contrary intent. Unif. Probate Code § 8-101(b)(5) (Unif. Law Comm'n 2010). Several of the cases relied on this provision to find that the statute at issue was a rule of construction and, therefore, applied to the previously executed instrument. See, *e.g.*, *Stillman*, 343 F.3d at 1317-18; *Buchholz*, 2007 SD 101, ¶¶ 11-12. But see *Parker*, 178 N.E.3d at 866 (finding that the statute at issue was not a rule of construction but nevertheless applied to the policy due to different statutory language). The statute at issue in the case at bar does not contain such a provision, so these cases are of limited utility to our analysis.

¶ 47    There are several cases, however, that find important the fact that a beneficiary's interest in a life insurance policy vests only upon the insured's death. For instance, in *Andronescu*, 2013 MT 13, ¶ 12, the Supreme Court of Montana found that the statute at issue operated at the time of the insured's death and, therefore, applied even where the dissolution judgment preceded its enactment. The court noted that a life insurance policy owner, like a testator, could alter or revoke designations at any time until death and, thus, "either instrument—whether will or insurance policy—must be interpreted and applied at death in order to effectuate the transferor's final intent." *Id.* ¶ 7. The court further noted that, prior to the insured's death, the former spouse had no vested rights in the proceeds of the insurance policy and the designation

of the former spouse as beneficiary "had no legal effect before the date of" the decedent's death. *Id.* ¶ 12. Similarly, in *Meier*, 2022 WL 4488505, at *14, decided by a South Carolina appellate court only a few weeks ago, the court first found that the statute at issue was a rule of construction and therefore applied to revoke the former spouse's status as a beneficiary. In addition, however, the court also found that the former spouse had no vested interest in the policy until the time that the insured died. *Id.*

¶ 48                                                Interpretation of Statute at Issue

¶ 49        Examining the language of the statute at issue in the instant case, and interpreting it in light of the cases discussed above, we must find that the operative act triggering application of the statute is the date of the dissolution judgment, not the date of Tyrone's death. As noted, there are several indications within the language of the statute itself—such as its use of the present tense and its location within section 503 of the Act, which governs the division of property in the context of dissolution proceedings—that suggest that it was intended to apply in the context of dissolution proceedings, not at some later time. We additionally find that, while the argument that a beneficiary's interest vests only upon death has some surface appeal, this argument is one that our supreme court has repeatedly rejected in the context of wills and the same reasoning would apply here. Finally, we find it notable that our legislature chose *not* to use the same language as contained in the Uniform Probate Code, including the language about the effect of a "rule of construction or presumption," which several other states have found vital in applying their statutes in similar contexts. See, *e.g.*, *Stillman*, 343 F.3d at 1317-18; *Buchholz*, 2007 SD 101, ¶¶ 11-12. We therefore conclude that the most reasonable reading of the statute is that the operative act which triggers its application is the entry of the dissolution

judgment. In the instant case, where the date of the dissolution judgment preceded the effective date of the statute, the statute does not apply.

¶ 50                                CONCLUSION

¶ 51        The circuit court's judgment is affirmed, where the court properly found that the statute revoking a former spouse's status as beneficiary of a life insurance policy after a dissolution judgment did not apply where the dissolution judgment was entered prior to the effective date of the statute.

¶ 52        Affirmed.

*Shaw v. U.S. Financial Life Insurance*, 2022 IL App (1st) 211533

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-CH-4851; the Hon. Anna M. Loftus, Judge, presiding. |
| **Attorneys for Appellant:** | Berton N. Ring, of Berton N. Ring, P.C. of Chicago (Edward Washington II, of counsel), for appellant. |
| **Attorneys for Appellee:** | Richard Lee Stavins and Riccardo A. DiMonte, of Robbins DiMonte, Ltd., of Chicago, for appellee. |